**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Patricia Marie POOL and Larry Donald
Baird, Defendants–Appellants.**

**Nos. 90–7039, 90–7040.**

United States Court of Appeals,
Tenth Circuit.

July 5, 1991.

Gene V. Primomo of Wilcoxen & Wilcoxen, Muskogee, Okl., for defendant-appellant Baird.

Craig Bryant, Asst. Federal Public Defender, Tulsa, Okl., for defendant-appellant Pool.

Sheldon J. Sperling, Asst. U.S. Atty., Muskogee, Okl. (John Raley, U.S. Atty., with him on the brief), for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, and BRIGHT * and SEYMOUR, Circuit Judges.

HOLLOWAY, Chief Judge.

Defendants/appellants Patricia Marie Pool and Larry Donald Baird appeal their sentences on convictions following pleas of guilty to one count of robbery of the Farmers Exchange Bank of Antlers, Oklahoma, in violation of 18 U.S.C. §§ 2113(a) and 2. The appellants claim that the trial judge improperly departed upwards from the Sentencing Guidelines in passing sentence. Baird makes the additional claim that he was wrongfully deprived of notice of the

trial judge's intention to depart upward prior to such departure from the Sentencing Guidelines. Although they have appealed separately, due to overlap of the issues and the underlying facts of the cases involving one trial, we shall address both appellants' claims in this one opinion.

I

On February 20, 1990, Pool, Baird, and Rochelle Lynn Taylor, an unindicted 16 year old girl, met at Hugo, Oklahoma, to plan a bank robbery of the Security First National Bank in Hugo. II R. Doc. 16 at 1. The three co-conspirators proceeded with the robbery as planned. Baird and Pool remained in Baird's car and parked near the bank while Taylor, the juvenile, entered the bank and presented a robbery note to a teller. The note read "SHUT UP FILL THE BAG I HAVE A GUN." *Id.* The teller asked Taylor if she was serious and Taylor responded by pulling back her jacket and pointing to her chest as if concealing a gun. *Id.* The teller then said that she had no money, but would give the note to someone who did. Taylor said to forget it and left the bank to meet the appellants and drive away.

The three then went to rob the Farmers Exchange Bank of Antlers, Oklahoma. Again, Taylor entered alone, leaving Pool and Baird waiting with the car, and presented the teller with a note which stated "SHUT THE FUCK UP FILL THIS BAG WITH MONEY AND I WON'T SHOOT YOU." *Id.* Baird was driving the car, and Pool had written out the note. Supp. II R. at 23–26. The teller asked Taylor if she really wanted to do this and Taylor said yes. The teller put $7,298 in the bag and Taylor left with the money to meet the defendants around the corner. The three then left town in Baird's automobile. II R. Doc. 16 at 2. When the three were arrested shortly thereafter in Baird's automobile, the police found all $7,298 of the Farmers Bank robbery proceeds. Also

---

\* Honorable Myron H. Bright, United States Circuit Judge for the Eighth Circuit, sitting by designation.

found, in Taylor's jacket, was a toy cap pistol.

The presentence report (PSR) for Pool recommended a total offense level of 23 with a criminal history category of I for a total sentencing range of 46 to 57 months. Baird's PSR recommended the same offense level of 23 as for Pool, but with his criminal history category of III, the total sentencing range was from 57 to 71 months. The PSR recommendations for both Baird and Pool included several adjustments: a two level enhancement for robbery of a financial institution under § 2B3.1(b)(1); a three level enhancement for brandishing, displaying, or possessing a dangerous weapon under § 2B3.1(b)(2)(C); and a two level reduction for acceptance of responsibility under § 3E1.1(a). *Id.* at 2–3.

Pool filed an objection to the PSR, stating that the dangerous weapon enhancement was not warranted as there was no evidence before the court that Pool knew or should have known that Taylor had a dangerous weapon. Baird made a similar objection to the PSR, but also advanced the additional argument that a toy pistol should not be considered a dangerous weapon. Subsequent to this objection, the Probation Office filed addenda to both the Pool and Baird PSRs. The addenda stated that both Pool's and Baird's fingerprints were on both robbery notes. The addenda also stated that for approximately four days immediately prior to the robbery and attempted robbery, the three conspirators had stayed in the same hotel room. Under these circumstances, the PSRs suggested that it was "unbelievable" that Pool and Baird could not have known about the toy gun. II R. Docs. 21, 22.

At the sentencing hearing the district judge announced that he was going to depart upward from the Guidelines under U.S.S.G. § 5K2.0 by adding 60 months to each defendant's sentence. III R. at 16–17. The judge stated that the departure was due to the two adults' involvement of the juvenile, Taylor, in the robbery. *Id.* at 17. Thus, Baird received 71 months, the maximum sentence within his guidelines range, plus an upward departure of 60 months for

a total of 131 months. Pool received 57 months, the maximum sentence for her guidelines range, plus an upward departure of 60 months for a total of 117 months.

On appeal, Pool and Baird both argue that the district court erred in making its departure upwards. Baird also argues that he was improperly not notified of the judge's intention to depart upward until the sentencing hearing. Pool also argues that the district court erred in failing to sustain her objection to the dangerous weapon enhancement made under § 2B3.1(b)(2)(C). We address these issues in reverse order.

## II

First, we turn to the contention that the district court erred in upwardly adjusting Pool's and Baird's offense levels under § 2B3.1(b)(2)(C) relating to whether "a dangerous weapon (including a firearm) was brandished, displayed, or possessed...." The argument is that the evidence before the court was insufficient to find that an upward adjustment under this section was warranted.

█   We review factual findings underlying upward adjustments with deference, overturning them only upon a determination that the findings were clearly erroneous or without factual support in the record such that our review leaves us with the firm and definite conviction that a mistake has been made. *United States v. Beaulieu,* 893 F.2d 1177, 1181–82 (10th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990); *United States v. Beaulieu,* 900 F.2d 1531, 1535–36 (10th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 3252, 111 L.Ed.2d 762 (1990).

█   Section 2B3.1(b)(2)(C) of the Guidelines provides for a three level increase "if a dangerous weapon (including a firearm) was brandished, displayed, or possessed." The PSRs recommended that this increase be made for Pool and Baird. The district judge found, after both counsel had addressed the issue, that by a preponderance of the evidence the PSRs' recommendations to enhance by three points were correct. III R. at 14, 34. The PSRs indicated that

the bank robbery notes presented in Hugo and in Antlers threatened violence from a firearm. II R. Docs. 16 at 1, 17 at 1. Pool and Baird testified at the presentencing hearing that Pool had written the robbery note for the successful Antlers robbery. Supp. II R. at 24, 25. Pool's and Baird's fingerprints were found on both robbery notes. II R. Docs. 21, 22.

Baird testified that Taylor had a toy cap gun with her when she entered the Antlers bank. Supp. II R. at 25. At the Hugo bank, Taylor pointed to part of her jacket to indicate the presence of a gun. II R. Docs. 21 at 1, 22 at 1. When the three coconspirators were arrested soon after the Antlers robbery, the toy gun was found in Taylor's jacket.[1] The evidence is thus sufficient that Taylor possessed a "dangerous weapon" within the meaning of the Guidelines and that both Pool and Baird were aware that she possessed it. We, therefore, find no error in the trial court's upward adjustment under § 2B3.1(b)(2)(C).

### III

The second claim of error is that no notice of departure was given prior to the 60 months' upward departure from the Guidelines. This claim is argued only by Baird.

Here the PSRs specifically stated that there were no factors that may warrant departure. II R. Docs. 21 at 7, 22 at 7. The trial judge stated at the presentencing hearing that departures were seldom made with any success and that he would decide whether to depart. Supp. II R. at 10–11. At the presentencing hearing, there was no other discussion of departure, nor of any possible reasons for an upward departure for the appellants.

At the sentencing hearing, however, the judge told Pool and Baird that he intended to depart upward by 60 months on account of the juvenile's involvement in the crimes. The judge then offered some time to Baird's counsel, stating it was permissible "if you want to have a seat at counsel table and talk with your client." III R. at 17. The judge told counsel for Baird and Pool:

I just wanted to tell you that in advance so that will give you an opportunity. I haven't heard what you have to say, but I certainly will. And I haven't sentenced either of them at this time so I just want to give you that advantage, so you might want to talk with both of them, and then we can proceed.

We note that neither counsel for Baird nor for Pool made any request for additional time or a continuance at the sentencing hearing. Baird's counsel simply asked "to have a few minutes and possibly go across the hall and we [Baird and counsel] can sit down at a table and discuss this ... instead of whispering over here." III R. at 17. Counsel for Pool was asked by the court, "Have you had sufficient time to discuss this with your client, or do you need additional time in which to prepare and submit evidence, or is there anything else you need to do preparatory to sentencing?" Pool's counsel replied "No, Your Honor, I don't believe so." III R. at 25. No objection to the court's procedure was made by either counsel and there was no request for a continuance.

In these circumstances the claim of error due to lack of notice of departure is not persuasive. However, since we are obliged to remand these cases for the district judge to state the reasons for the extent of the departure, as explained below, the court should give notice in advance of resentencing of any departure contemplated and afford an opportunity to the parties to address the matter of departure. A recent decision of the Supreme Court, *Burns v. United States*, —— U.S. ——, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991) has now held that notice must be given either by the PSR or by the district court before a departure upwards from the Guidelines' range may be made. The Supreme Court expressed no opinion on the timing of the reasonable notice required, leaving this matter to the lower courts which remain

---

1. Although the gun carried by Taylor was a plastic gun, the Sentencing Guidelines indicate that "an object that appeared to be a dangerous weapon [should be treated] as a dangerous weapon for the purposes of subsection (b)(2)(C)." U.S.S.G. § 2B3.1, comment. (n. 2).

free to adopt local rules on this procedure. *Id.*, 111 S.Ct. at 2187, note 6. After *Burns*, we must be sensitive to the matter of affording notice.

## IV

The final claim of error to be addressed is that the district court erred in making the upward departure from the Sentencing Guidelines, adding 60 months to the sentences of Pool and of Baird. The appellants both argue that the record contains no factual basis for the district court's findings which served as a basis for the departure. Brief of Appellant Pool at 12; Brief of Appellant Baird at 8. In the alternative, the appellants argue that the degree of departure was not adequately explained by the judge.

■ A district court's decision to depart from the Guidelines is reviewed in a three step analysis. First, this court must determine whether the circumstances cited by the district court justify departure. Second, we must review the district court's factual determinations under the clearly erroneous standard. Finally, we must consider the reasonableness of the degree of departure. *United States v. St. Julian*, 922 F.2d 563, 567 (10th Cir.1990); *United States v. White*, 893 F.2d 276, 277–78 (10th Cir.1990).

■ The district judge cited the appellants' involvement of a 16 year old juvenile in the bank robberies as the basis for departure, stating that the defendants "used a juvenile in perpetrating the crime, and if they did not send her in then they at least allowed her to go in, and she was a part of it, and it endang[ere]d her life." III R. at 36. The judge also noted that the involvement of a juvenile in a robbery is an aggravating circumstance which was not considered in the formulation of the Sentencing Guidelines. *Id.* at 16.

The appellants argue that there is inadequate evidence in the record to support a

finding that Pool and Baird exercised any coercion or influence over Taylor to involve her in the robbery. The district judge, however, said only that the circumstances requiring departure were that "if they [Pool and Baird] did not send her [Taylor] in, they at least allowed her to go in." *Id.* at 36. The judge found the involvement of the juvenile to be especially egregious because she, as the only robber to actually enter the bank, was the only one in serious danger of being killed by a bank guard. III R. at 36.

Without expressing any opinion on the reasonableness of the degree of departure here, we agree with the district judge and hold that the involvement of a juvenile in a crime of this type, with the potential for serious injury or death, is a proper ground for an upward departure, and that this, factor was not considered by the Sentencing Commission for an offense of this type.

Additionally, defendant Pool argues since Taylor was 16 years old at the time of the robbery she was considered an adult under Oklahoma law. Brief of Appellant Pool at 12.[2] The State law, 10 O.S.Supp.1990 § 1101, subd. 1, provides that while a "Child" means any person under 18 years of age, there is an exception that any person 16 or 17 years of age who is charged with any crime specified in 10 O.S.Supp. 1990 § 1104.2(A), which includes "robbery with a dangerous weapon," *inter alia*, shall be considered an adult. *Id.* Federal law governs, however, respecting classification of a person charged with a federal crime such as a violation of the bank robbery statute, 18 U.S.C. § 2113. Such classification and treatment of juveniles on the basis of age are governed by federal statutes. *E.g.*, 18 U.S.C. §§ 5031, 5032.

Federal law defines a juvenile as being under the age of 18 or, "for the purpose of proceedings and disposition under this chapter for an alleged act of juvenile delinquency, a person who has not attained his twenty-first birthday." 18 U.S.C. § 5031.

---

**2.** Counsel for the government stated at the sentencing hearing that Taylor had indicated in an interview that she was born on June 21, 1973, making her 16 years old at the time of the

robbery. III R. at 21. This statement was not rebutted by counsel for either Pool or Baird and is undisputed in the briefs on appeal.

Congress and the Sentencing Commission have also shown their concern for protecting those under 21 years of age by providing for increased sentences for persons (at least 18 years of age) distributing drugs to such persons under 21 years of age. *See* 21 U.S.C. § 859; *see also* U.S.S.G. § 2D1.2(a)(3) (providing for an offense level of 26 for drug offenses involving persons less than 18 years of age). Although under certain circumstances a 16 year old can be prosecuted as an adult by federal authorities, we do not find anything in the record which leads us to believe that the district court's characterization of Taylor as a juvenile was in error.[3] In any event, we find no statute or guideline rule making improper as a basis for departure the district court's concern here about endangering the 16 year old person.

In sum, we hold that the district judge cited a proper ground for a departure upward by pointing to the involvement by the defendants of a juvenile in a crime with the potential for serious injury or death.

■ Next, the question is raised whether there was a sufficient factual basis in the record to support the circumstances upon which the district court relied. *White*, 893 F.2d at 278. The record contains evidence in the PSRs as well as in the testimony of the appellants at the presentencing hearing which indicates the juvenile Taylor's involvement in the crime. Additionally, the record indicates that Baird, accompanied by Pool, drove Taylor to the bank at Antlers where they waited in the car while she was inside and presented the robbery note which had been written by Pool. We find there was a sufficient factual basis demonstrating the circumstances relied on by the district court for the upward departure.

■ Finally, we must determine if the degree of departure chosen by the district court is reasonable. Pool argues that the departure should be vacated because the judge did not adequately explain the 60 month departure and because the degree of departure was unreasonable. Brief of Appellant Pool at 12. Baird says the degree of departure was unreasonable. Brief of Appellant Baird at 11–13.

In explaining the extent of departure regarding Baird, the district judge said that "[t]his aggravating circumstance warrants substantial departure pursuant to Section 5K2.0, and a failure to depart would be a travesty of justice." III R. at 23. U.S.S.G. § 5K2.0, pursuant to 18 U.S.C. § 3553(b), provides for departure if the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission. In explaining the extent of departure regarding Pool, the district judge said that

> The reason for imposing this sentence is that you have involved a sixteen years old juvenile and endangered the life of that juvenile by involving her in your criminal activity. And that is an aggravating circumstance not considered by the Sentencing Commission in formulating the Guidelines. This aggravating circumstance warrants substantial departure pursuant to Section 5K2.0, and a failure to depart would be a travesty of justice.

III R. at 39.

The Sentencing Guidelines were authorized to eliminate the sentencing uncertainties and disparities between sentences which were possible under the old system.

---

**3.** Title 18 § 5032 provides in part that

[a] juvenile who is alleged to have committed an act after his sixteenth birthday which if committed by an adult would be a felony offense that has as an element thereof the use, attempted use, or threatened use of physical force against the person of another, or that, by its very nature, involves a substantial risk that physical force against the person of another may be used in committing the offense . . . and who has previously been found guilty of an act which if committed by an adult

would have been one of the offenses set forth in this subsection or an offense in violation of a State felony statute that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed, shall be transferred to the appropriate district court of the United States for criminal prosecution. 18 U.S.C. § 5032. Although defense counsel for Baird indicated that Taylor might have been involved in other bank robberies with other persons, nothing in the record supports this statement.

*See Mistretta v. United States,* 488 U.S. 361, 366, 109 S.Ct. 647, 651, 102 L.Ed.2d 714 (1989). Nevertheless the Sentencing Commission recognized that crimes might be committed which involved "aggravating or mitigating circumstance[s] of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...." U.S.S.G. § 5K2.0, p.s. To permit appropriate sentencing under anomalous circumstances, the Guidelines allow the trial court to depart upward or downward from the Guidelines as the situation dictates. The degree of departure is within the sound discretion of the sentencing court. This does not mean, however, that once the decision to depart is properly made, a sentence may be imposed anywhere between the minimum and maximum authorized by statute; the Guidelines are not discarded at this point in the sentencing process. *See St. Julian,* 922 F.2d at 569; *United States v. Jackson,* 921 F.2d 985, 989 (10th Cir.1990) (en banc).

The only way that we can adequately review a district court's departure is by examining the court's stated reasons for the degree of departure. *Id.* at 989–90; *United States v. Davis,* 912 F.2d 1210, 1215 (10th Cir.1990); *United States v. Gardner,* 905 F.2d 1432, 1436 (10th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 202, 112 L.Ed.2d 163 (1990). In the instant case, the sentencing court set forth the factors which led to the decision to make a departure upward from the Guidelines, but the court did not explain how these factors led to the decision to depart upward by 60 months. From this record, as in *St. Julian,* we can find "no reasonable methodology hitched to the Sentencing Guidelines to justify the reasonableness of the departure." *St. Julian,* 922 F.2d at 569 (quoting *United States v. Harris,* 907 F.2d 121, 124 (10th Cir.1990)). Absent any explanation as to why a 60 month departure was appropriate, it is impossible for us to determine whether the sentence outside the Guideline range was reasonable. *See St. Julian,* 922 F.2d at 569; *United States v. Smith,* 888 F.2d 720, 723–24 (10th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1786, 108 L.Ed.2d 788 (1990). Since we cannot properly review the district court's degree of departure here, it is necessary that we remand to the district court for resentencing and specifically for the district judge to have further proceedings needed for this purpose and for the court to state the reasons for the degree of any departure upwards which is made. *See United States v. Jackson,* 921 F.2d at 989.

The trial court on remand may hear additional evidence bearing on a proper sentence and, based on the full record, reconsider the sentences in question as to whether upward departure from the guidelines should be made and the degree of that departure.

V

Accordingly, due to the error resulting from the district judge's failure to adequately explain the reasons for the extent of the departure, we remand these causes to the district court with directions to vacate the sentences. The court should reconsider the issue of departure, affording reasonable notice and opportunity for the parties to address the departure issue. The court should then express its reasons for the degree of departure, if any, decided upon and impose new sentences, all in accord with this opinion.

IT IS SO ORDERED.