**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Harold Hall PASLAY, a/k/a Pat**
**Paslay, Defendant–Appellant.**

**No. 90–8832.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 3, 1992.

David W. Wallace, Marietta, Ga., for defendant-appellant.

Kent Alexander, Leo E. Reichert, Asst. U.S. Attys., Atlanta, Ga., for plaintiff-appellee.

Before BIRCH, Circuit Judge, JOHNSON *, and BOWNES **, Senior Circuit Judges.

---

\* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

\*\* Honorable Hugh H. Bownes, Senior U.S. Circuit Judge for the First Circuit, sitting by designation.

JOHNSON, Senior Circuit Judge:

## I. STATEMENT OF THE CASE

Harold Hall Paslay appeals his sentence for two of five counts of conviction. For the reasons that follow, we vacate his sentence on these counts and remand.

### A. *Background Facts*

In 1986, appellant Paslay embarked on a bold scheme to defraud hundreds of people by selling them franchises in a "legal expense" insurance company. In the scheme, Paslay sold distributorships in American Legal Distributors, Inc. (ALD). The distributorships, which cost purchasers between $2,500 and $25,000, allowed the purchasers to direct market legal insurance policies to the public. In order to help secure investors, Paslay paid "singers" to provide potential investors with untrue testimonials regarding the profitability of ALD distributorships.

Through brochures placed in local stores, the distributors were to sell legal insurance policies directly to the public. ALD promised to pay the distributors a commission on the policies that they sold. The policies ostensibly provided policyholders with free or reduced-rate legal assistance through the Lawyer Access Network (LAN). Policyholders were told that the LAN consisted of attorneys throughout the nation who would provide legal assistance either free of charge or at a substantial discount.

Paslay's scheme soon collapsed. When distributors and policyholders attempted to access the LAN, they discovered that it was non-existent. Before the scheme came to an end, however, Paslay had sold at least 375 distributorships in over 30 states. Investors were defrauded of around $3.3 million.

### B. *Procedural History*

On November 8, 1989, a federal grand jury indicted Paslay on thirty-four criminal counts relating to the ALD/LAN scheme. On December 12, 1989, Paslay pled not guilty to all counts. However, on April 25, 1990, pursuant to a plea bargain, Paslay changed his plea to guilty on the following five counts: count I, which alleged mail fraud in violation of 18 U.S.C.A. § 1341 (1984); count IV, which alleged transportation of stolen goods, securities, or money in violation of 18 U.S.C.A. § 2314 (West Supp. 1992); counts XXVII and XXXII, which each alleged wire fraud in violation of 18 U.S.C.A. § 1343 (1984); and count XXXIV, which alleged a criminal conspiracy to commit mail fraud and wire fraud in violation of 18 U.S.C.A. § 371 (1966).

On July 25, 1990, the government mailed Paslay a copy of its presentencing memorandum, which recommended an upward departure from the sentencing guidelines in light of Paslay's past and continuing involvement in fraudulent schemes. On August 16, 1990, the district court sentenced Paslay. The lower court divided its sentencing between the three counts that arose prior to the guidelines and the two counts that ostensibly arose after the applicability of the guidelines.[1]

The lower court imposed five year sentences for counts IV, XXVII, and XXXII,

---

1. The lower court improperly classified count I, which involved criminal activity occurring entirely before November 1, 1987, as a sentencing guidelines count. *See* Sentencing Hearing Transcript, at 65–66, 70–71 (August 16, 1990) (hereinafter "Transcript"). Count I alleged mail fraud occurring "on or about July 28, 1987." Although a conviction based on a conspiracy occurring both prior to and after the effective date of the guidelines is to be treated as a guidelines count, *see United States v. Nixon,* 918 F.2d 895, 906–07 (11th Cir.1990), sentencing for a conviction related to a discrete crime committed incident to such a conspiracy is governed by the guidelines only if that crime occurred after November 1, 1987. *See United States v. Metallo,*

908 F.2d 795, 800 (11th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 1483, 117 L.Ed.2d 625 (1992); *United States v. Pippin,* 903 F.2d 1478, 1480–81 (11th Cir.1990); *United States v. Curry,* 902 F.2d 912, 917 (11th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 588, 112 L.Ed.2d 592 (1990). In an alternative sentence on count I, the sentencing court stated that even if count I was not a guidelines count it would have sentenced Paslay to thirty months' imprisonment on count I to run concurrently with the sentence for counts IV, XXVII, and XXXII, and consecutively with the sentence imposed for count XXXIV. We rely upon the district court's alternative sentence for count I in this appeal.

all of which related to activities occurring prior to the effective date of the sentencing guidelines. The sentences were to run consecutively with each other, for a total of fifteen years imprisonment, and concurrently with the sentences for counts I and XXXIV.

Regarding the counts ostensibly arising after the applicability of the sentencing guidelines, the lower court sentenced Paslay to thirty months imprisonment for count I, and to sixty months imprisonment for count XXXIV. The sixty and thirty month sentences were to run consecutively with each other but concurrently with the sentences for the pre-guidelines counts. In order to reach the ninety month total, the lower court departed from the guidelines by adding four points to Paslay's base offense level. The lower court justified its departure based on both the harm Paslay caused to his accomplices and Paslay's use of a weapon or dangerous instrumentality during the pendency of his scheme. *See* U.S.S.G. § 5K2.0 (general rule); *id.* at § 5K2.6 (weapon or dangerous instrumentality). Finally, the lower court sentenced Paslay to three years supervised release to follow his sentences, ordered him to pay $3.3 million in restitution,[2] and imposed a $50 special assessment per count, for a total of $250 in special assessments.

## II. ISSUES

In his direct appeal, Paslay argues that the lower court's upward departure from the sentencing guidelines was improper for two primary reasons. First, Paslay asserts that the lower court improperly relied on the "victimization" of his accomplices in making its four-level departure. Second, Paslay claims that he was not accorded proper notice of the lower court's grounds for departing from the guidelines under *Burns v. United States,* — U.S. —, —–—, 111 S.Ct. 2182, 2186–87, 115 L.Ed.2d 123 (1991). In addition, Paslay argues that the lower court abused its discretion by denying him a two-level reduc-

tion in offense level for acceptance of responsibility.

## III. ANALYSIS

### A. *The Upward Departure*

Paslay contends that the lower court's decision to add four points to his offense level was at least partly unauthorized by the guidelines. This Court employs a three-step test when evaluating a lower court's decision to depart from the guidelines. The first question is "whether the guidelines adequately consider a particular factor so as to preclude a district court from relying upon it as a basis for departure. We exercise *de novo* review of this question of law." *United States v. Weaver,* 920 F.2d 1570, 1573 (11th Cir.1991). The second step is for the reviewing Court to examine the factual basis for the lower court's departure. *Id.* This review is limited to a search for "clear error." *Id.* Finally, if the first and second tests have been satisfied, this Court must make a *de novo* review of the "reasonableness" of the departure. *Id.*

A proper analysis of whether the lower court's upward departure was justified necessarily begins with an examination of the reasons proffered by the lower court for its departure. *See id.* In the case at bar, the lower court departed for two reasons: (1) "in effecting the scheme, violent behavior was utilized in that Mr. Paslay used an aluminum instrument, a baseball bat or hammer, to bash in Mrs. Mednick's [his corporate counsel] car ... and, on Mr. Paslay's instructions, one of his employees used a pistol to shoot and flatten one of Mrs. Mednick's automobile tires," and (2) some of the accomplices (the "singers") would not have become felons had Paslay not organized the scheme. Transcript, at 70–72. *See also* U.S.S.G. § 5K2.6 (use of weapon or dangerous instrumentality incident to crime); *id.* at § 5K2.0 (general statement regarding unguided departures—applicable to court's "victimization" of the accomplices rationale).

---

**2.** Paslay voluntarily turned over to the government a lake house valued at approximately $300,000. The lower court applied this amount against the restitution portion of the sentence, leaving Paslay to pay an additional $3 million in restitution.

■ The sentencing court's reliance on the "victimization" of the singers was misplaced on the facts of this case. The guidelines provide for a four-level upward departure if a person is a "leader" or "organizer" of a criminal enterprise. U.S.S.G. § 3B1.1(a). The application notes to this provision provide that "[f]actors the court should consider include ... *the recruitment of accomplices...."* *Id.* at application note 3 (emphasis added). *See* U.S.S.G. § 3B1.1(a); *Weaver,* 920 F.2d at 1573. *See generally United States v. Robinson,* 898 F.2d 1111, 1118 (6th Cir.1990) (§ 3B1.1(a) takes into account the use of an "intermediary" to commit a crime; consequently, sentencing court could not rely on defendant's use of an intermediary to justify an upward departure). Section 3B1.1(a)'s consideration of the "recruitment of accomplices" anticipates some degree of participation in the criminal activity by the accomplices. Moreover, a crime involving accomplices routinely will involve some level of "victimization," if by "victimization" one means that those recruited would not have become involved in a criminal enterprise and would have remained law-abiding citizens but for their recruitment.[3] If a district court wishes to make an upward departure for the "victimization" of accomplices based on their recruitment, the victimization resulting from the recruitment must be of a kind or degree not inherent in their recruitment. *See* U.S.S.G. § 3B1.1(a); *United States v. Sasnett,* 925 F.2d 392, 398 (11th Cir.1991); *Weaver,* 920 F.2d at 1573. In addition, the guidelines specifically take into account the exploitation of vulnerable victims. *See* U.S.S.G. § 3A1.1. Although the alleged "victims" in this case were also accomplices, we see no reason why fraud perpetrated on vulnerable accomplices could not be subsumed under this section. *See generally United States v. Smith,* 930 F.2d

1450, 1454–56 (10th Cir.) (applying section 3A1.1 to a person other than the direct victim of the crime of conviction), *cert. denied,* —— U.S. ——, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991). At the outset then, the district court's reliance on section 5K2.0 to support its "victimization" rationale must relate to "victimization" of a kind or degree not already subsumed within sections 3B1.1(a) or 3A1.1. *Weaver,* 920 F.2d at 1573.[4]

■ The government argues that section 3B1.1(a) does not take into account a scenario wherein the organizer "tricks" his accomplices into participating in a crime. Neither the government nor the district court considered the potential applicability of section 3A1.1. Assuming *arguendo* that an upward departure pursuant to section 5K2.0 for "victimization" of a kind or degree not comprehended by sections 3B1.1(a) or 3A1.1 would be proper, we find that the facts in this case do not establish "victimization" of a kind or degree sufficient to support an additional departure under section 5K2.0. The "victims"/accomplices in this case were the "singers": people who took money from Paslay to falsely represent to potential investors that they were happy, wealthy, distributors of Paslay's insurance products. In point of fact, the singers were not distributors and had no direct or actual knowledge of whether the distributorships that they were promoting had any value whatsoever. The astounding scope of the singers' lies regarding the quality of ALD investments belies any claim that they were mere innocents duped into participating in the scheme.[5] *Cf. United States v. Anderson,* 895 F.2d 641, 642–44 (9th Cir.1990) (where bona fide innocent dupe involved, dupe's participation improperly considered through section 3B1.1(a)), *vacated and remanded,* 942 F.2d 606 (9th Cir.1991) (en

---

**3.** We believe that it can reasonably be said of many, if not most, accomplices that their participation in a criminal enterprise was a direct byproduct of their recruitment.

**4.** Unfortunately, neither the government nor the district court considered the potential applicability of section 3A1.1.

**5.** Some of the more colorful examples include statements by "singers" to potential investors to the effect that their husbands were contemplating quitting their regular jobs because of the fabulous returns on their ALD distributorship. All of the singers used aliases, and some of them possessed more than one alias. Paslay paid the singers $20 to $25 per reference.

banc). Thus, although the sentencing court's conclusion that the singers would not have participated in a fraudulent scheme had they not been recruited by Paslay may well be true, that observation does not justify a finding by this Court that the specific recruitment at issue in this case is not of the same sort expressly contemplated by section 3B1.1(a). Moreover, to the extent that victimization of particularly vulnerable persons is at issue, we fail to see how the victimization at issue differs from that already expressly considered in a potentially applicable guideline. *See* U.S.S.G. § 3A1.1 (praying upon vulnerable victims).

Because the guidelines provide adequate consideration of the recruitment of the "singers," the lower court's reliance on section 5K2.0 as a basis for an unguided upward departure was not permissible. *See Sasnett,* 925 F.2d at 398; *Weaver,* 920 F.2d at 1573. We do not foreclose the possibility of a sentencing court making an upward departure under section 5K2.0 based on the "victimization" of one's partners in crime. Rather, on the facts of this case, we have not found sufficient support in the record to remove the case from the compass of either sections 3A1.1 or 3B1.1(a). *See generally United States v. Ponder,* 963 F.2d 1506, 1509–10 (11th Cir.1992).

 The other reason proffered by the lower court to justify its upward departure from the guidelines—the use of a weapon or dangerous instrumentality—is entirely proper and is warranted in this case.[6] The general guideline and offense characteris-

tics for fraud do not take into account the use of a weapon or dangerous instrumentality, and the record shows that Paslay used a weapon or dangerous instrumentality incident to his crime. An upward departure of up to four levels would not necessarily be unreasonable on these facts. *Weaver,* 920 F.2d at 1573; U.S.S.G. § 5K2.6 (authorizing an upward departure for the use of a weapon or dangerous instrumentality). *See also* U.S.S.G. § 2F1.1 (guideline for fraud, which provides no special consideration for fraud involving the use of weapon or dangerous instrumentality); *Sasnett,* 925 F.2d at 395, 398 (approving an upward departure of 30 months under sections 5K2.2 and 5K2.5 on a sentence with a normal range of 24–30 months because of appropriate facts). The only problem the Court faces, then, is how to apportion the four-level increase between the two reasons proffered by the lower court. Because the record does not establish the relationship between the two reasons and the ultimate four-level departure,[7] we conclude that a remand is necessary in order to allow the district court to either apportion the four-level increase (and omit the increase attributable to court's "victimization" rationale) or to explain why a four-level increase is appropriate under section 5K2.6 alone.[8]

### B. *Burns Notice*

 Paslay claims that the lower court's upward departure pursuant to section 5K2.6 was improper because he did not

---

6. Indeed, Paslay does not dispute that a guided upward departure of some sort pursuant to section 5K2.6 would be proper.

7. The lower court did not explain whether the two reasons given for the four level increase operated cumulatively or in the alternative. It appears that the sentencing court relied on both reasons separately in arriving at a total departure of four levels. *See* Transcript, at 71 (the lower court explained "[o]ne of the reasons is that in affecting the scheme, violent behavior was utilized," and then stated "[t]he Court further departs from the guidelines for reasons not contemplated by the Sentencing Commission"). However, the lower court did not apportion the four level increase between the two reasons. *See id.* at 71–72.

8. On remand the lower court could (but need not) reimpose the four level increase relying solely on the weapon/dangerous instrumentality guided departure provided in section 5K2.6. Although this Circuit has not yet addressed the size of a permissible upward departure under section 5K2.6, we believe that *a four level increase in offense level would not be unreasonable in this case* given the use of a baseball bat and the discharge of a gun. *See United States v. Gaddy,* 909 F.2d 196, 199–200 (7th Cir.1990). *Cf. United States v. Connor,* 950 F.2d 1267, 1276–77 (7th Cir.1991) (example of where departure not warranted under section 5K2.6).

receive advance notice of the court's intention to make an upward departure on the basis of this provision.

Paslay's sentencing hearing occurred in August 1990. In June 1991, the Supreme Court held that a sentencing court may not make an upward departure from the guidelines absent advance notice to the defendant. *Burns v. United States,* —— U.S. ——, —————, 111 S.Ct. 2182, 2186–87, 115 L.Ed.2d 123 (1991).[9] *See also United States v. Cornog,* 945 F.2d 1504, 1513 (11th Cir.1991) (sentencing court must provide a defendant "notice and an opportunity to comment before it departs upward"). "[B]efore a district court can depart upward on a ground not identified as a ground for an upward departure either in the presentence report or in a prehearing submission by the Government, Rule 32 [of the Federal Rules of Criminal Procedure] requires that the district court give the parties reasonable notice that it is contemplating such a ruling." *Burns,* —— U.S. at ——, 111 S.Ct. at 2187. The *Burns* Court did not specify what constitutes a "reasonable" amount of time. *Id.* at —— n. 6, 111 S.Ct. 2187 n. 6. However, in the case at bar, the district court provided Paslay with *no time* between its decision to contemplate an upward departure under section 5K2.6 and its announcement of the upward

departure.[10] This course of action is inconsistent with *Burns.*

To be sure, in *Burns* the sentencing court *sua sponte* decided to make an upward departure, at —— – ——, 111 S.Ct. at 2184–85, whereas in the case at bar, the prosecutor suggested an upward departure based on section 5K2.6 at the sentencing hearing. Transcript, at 43–44, 71. However, this distinction is irrelevant to the application of *Burns. Burns* requires that pursuant to Fed.R.Crim.P. 32, criminal defendants be provided notice *prior* to the sentencing hearing of the *specific grounds* for any upward departure that a sentencing court is considering. *Burns* at —— – ——, 111 S.Ct. at 2186–87. Just as in *Burns,* the criminal defendant in this case, Paslay, was put in the position of making an on-the-spot defense against a ground for an upward departure about which he had received no advance notice. On these facts, *Burns* is controlling. *See id. See also United States v. Kalady,* 941 F.2d 1090, 1096–97, 1101–02 (10th Cir.1991) (applying *Burns* where presentence report did not adequately explain the particular recommended range for an upward departure). Although the government's sentencing memorandum did suggest an upward departure, it did not specifically suggest a departure based on section 5K2.6.[11]

**9.** We note that *Burns* applies retroactively to this case because the *Burns* Court applied the result in *Burns* to the parties in the case. *James B. Beam Distilling Co., Inc. v. Georgia,* —— U.S. ——, —— – ——, 111 S.Ct. 2439, 2445–46, 115 L.Ed.2d 481 (1991); *Lufkin v. McCallum,* 956 F.2d 1104, 1106–08 (11th Cir.1992).

**10.** Consequently, this Court need not address the particulars of the "reasonable time" requirement.

**11.** In an unpersuasive argument, the government suggests that it provided Paslay with "constructive notice" that an upward departure based on section 5K2.6 would be sought. The government's citation on this point is to the *facts* section of its sentencing memorandum. In its *recommendation* section, the government suggested an upward departure based solely on Paslay's history of involvement in criminal schemes. In its sentencing memorandum, the government never so much as hinted that an upward departure was warranted under section 5K2.6. In fact, the government first suggested that the lower court could rely on section 5K2.6

during the sentencing hearing. Transcript, at 43–44. Moreover, the presentence investigation report did not put Paslay on notice that an upward departure based on section 5K2.6 would be considered.

To accept the government's position that any mention of facts sufficient to warrant an upward departure in a sentencing memorandum satisfies the *Burns* notice requirement would be to eviscerate *Burns. Burns* holds that a criminal defendant is entitled to prior notice of the *specific grounds* the sentencing court is considering relying upon for an upward departure not otherwise "identified" in the presentence report or the prosecution's sentencing memorandum. *See Burns,* —— U.S. at ——, 111 S.Ct. at 2187. "Identified" means more than discernable through close study of the facts section of the government's presentence memorandum coupled with extensive perusal of the guidelines. For a defendant to be on notice for purposes of *Burns* that a specific ground may be relied upon to justify an upward departure based on a presentence document, we hold that the document must affirmatively indicate that an upward de-

■ Finally, we note that Paslay did not object at the sentencing hearing to the lower court's decision to rely on section 5K2.6 based on a lack of prior notice. Nor has Paslay made a proffer as to how he was prejudiced by the lack of prior notice. Thus, it is unclear at this point whether Paslay actually suffered any prejudice from the lower court's failure to provide *Burns* notice. Rule 52(a) of the Federal Rules of Criminal Procedure instructs this Court to disregard errors that do not affect the "substantial rights" of the accused. Although the *Burns* Court did not expressly address the applicability of the harmless error doctrine to *Burns* violations, we see no reason why the harmless error rule would not apply with full force. Fed. R.Crim.P. 52(a); *Arizona v. Fulminante*, —— U.S. ——, ——–——, 111 S.Ct. 1246, 1263–66, 113 L.Ed.2d 302 (1991); *United States v. Lane*, 474 U.S. 438, 448 n. 11, 106 S.Ct. 725, 731 n. 11, 88 L.Ed.2d 814 (1986).[12] The Supreme Court has repeatedly emphasized that Rule 52(a) is to be broadly applied. *United States v. Mechanik*, 475 U.S. 66, 71–72, 106 S.Ct. 938, 942–43, 89 L.Ed.2d 50 (1986); *Lane*, 474 U.S. at 444–50, 106 S.Ct. at 729–32. We therefore hold that a *Burns* violation is subject to harmless error review.[13] We also note that because the right to prior notice of the grounds for an upward departure implicates the due process clause of the Fifth Amendment, *see Burns*, —— U.S. at ——, 111 S.Ct. at 2187, the "harmless beyond a reasonable doubt" standard set forth in *Chapman v. California*, 386 U.S. 18, 22–24, 87 S.Ct. 824, 826–28, 17 L.Ed.2d 705 (1967), applies to violations of *Burns*.[14]

Unfortunately, neither the appellant nor the appellee has addressed the potential applicability of the harmless error doctrine to this case. Moreover, our independent review of the record does not provide a clear answer as to whether the *Burns* violation at issue was "harmless beyond a reasonable doubt." *Chapman* at 24, 87 S.Ct. at 828. However, given the procedur-

parture is appropriate based on a particular ground, each and every ground offered in support of an upward departure must be clearly stated, the facts supporting each such ground must be plainly set forth, and the defendant must be provided with the document setting forth the potential ground (or grounds) for the upward departure within a "reasonable" amount of time prior to the sentencing hearing. *See id.* at ——–——, 111 S.Ct. at 2185–86. *Cf. United States v. Hill*, 951 F.2d 867, 868 (8th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 2945, 119 L.Ed.2d 569 (1992); *United States v. Andrews*, 948 F.2d 448, 449 (8th Cir.1991). Anything less is inconsistent with the mandate of *Burns*.

12. The *Cornog* Court also failed to address whether the harmless error doctrine applied to *Burns* claims. *Cornog*, 945 F.2d at 1514.

13. We also note that ordinarily this Court will review a *Burns* violation only for "plain error" if a defendant fails to make a timely objection based on *Burns* before the sentencing court. *See* Fed.R.Crim.P. 52(b); *United States v. Solomon*, 856 F.2d 1572, 1575 (11th Cir.1988), *cert. denied*, 489 U.S. 1070, 109 S.Ct. 1352, 103 L.Ed.2d 820 (1989). We have not applied a plain error analysis in this particular case only because the right at issue (*Burns* notice) did not clearly exist at the time the plain error rule would have required Paslay to make an objection. *See Hormel v. Helvering*, 312 U.S. 552, 557–58, 61 S.Ct. 719, 721–22, 85 L.Ed. 1037 (1941); *United States v. Whitten*, 706 F.2d 1000, 1012 (9th Cir.1983), *cert. denied*, 465 U.S. 1100,

104 S.Ct. 1593, 80 L.Ed.2d 125 (1984); *see also United States v. Godoy*, 821 F.2d 1498, 1504 (11th Cir.1987) (plain error rule is not jurisdictional and may be waived in "exceptional" circumstances), *cert. denied*, 484 U.S. 1044, 108 S.Ct. 778, 98 L.Ed.2d 864 (1988)); *United States v. Hosford*, 782 F.2d 936, 938 n. 1 (11th Cir.) (example of Court waiving the plain error rule), *cert. denied*, 476 U.S. 1118, 106 S.Ct. 1977, 90 L.Ed.2d 660 (1986). We caution that for all cases in which sentencing occurs after June 13, 1991 (the date *Burns* issued), *Burns* notice will be subject to waiver and limited review under the plain error rule when a defendant fails to make a timely objection predicated on *Burns* in district court. ·

14. This Circuit has not determined whether there is a significant difference between the Rule 52(a) standard of harmless error review and the *Chapman* standard. *See United States v. Lehder–Rivas*, 955 F.2d 1510, 1517 n. 3 (11th Cir.1992). However, in this case we need not resolve the question of whether a significant difference exists between the Rule 52(a) standard and the *Chapman* standard, because the rule at issue in this case implicates interests clearly protected by the due process clause. *Burns*, —— U.S. at ——, 111 S.Ct. at 2187. *See generally Lehder–Rivas*, 955 F.2d at 1517 n. 3; *Lane*, 474 U.S. at 446 n. 9, 106 S.Ct. at 730 n. 9. *Cf. United States v. Drummond*, 903 F.2d 1171, 1174 (8th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 759, 112 L.Ed.2d 779 (1991).

al posture of this case, we need not decide whether the error raised on appeal was harmless.

We have already determined that Paslay's sentence must be vacated and remanded for resentencing. *See supra*, part III(A). Because a remand is necessary on other grounds, we instruct the sentencing court to provide Paslay with the required *Burns* notice prior to resentencing him if the sentencing court wishes to make an upward departure on count XXXIV on a ground not previously specifically identified. *See United States v. Pool*, 937 F.2d 1528, 1531–32 (10th Cir.1991). Simply put, in light of the need for resentencing on other grounds, we do not find it necessary to determine whether the lower court's initial failure to comply with *Burns* provides an independent basis for vacating the sentence. *See id.*

### C. *Acceptance of Responsibility*

■ Section 3E1.1 allows sentencing courts to grant a two offense level reduction if the defendant has clearly accepted responsibility for his crime. U.S.S.G. § 3E1.1. This Court's review of a denial of a section 3E1.1 reduction is limited: "The district court is in a unique position to evaluate whether a defendant has accepted responsibility for his acts, and this determination is entitled to great deference on review." *United States v. Pritchett*, 908 F.2d 816, 824 (11th Cir.1990). "Unless the court's determination is without foundation, it should not be overturned on appeal." *Id.* Consequently, this Court will overturn on appeal denials of the two point reduction only when the facts in the record clearly establish that a defendant has accepted personal responsibility. *See United States v. Howard*, 923 F.2d 1500, 1505 (11th Cir.1991). The burden of proof on this issue is with Paslay; a defendant is entitled to the two-level reduction only if he "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1(a). *See Howard*, 923 F.2d at 1505.

■ Admittedly, this is a close question. Paslay pled guilty and cooperated with au-

thorities. However, his probation officer testified that he did not seem at all remorseful. In addition, the lower court found that although Paslay had expressed regret, this expression was late in coming. Given the deference due to the lower court's finding in this matter, we decline to reverse the lower court's decision to deny Paslay the two-level reduction under section 3E1.1(a).

## IV. CONCLUSION

We VACATE Paslay's sentence on counts I and XXXIV and REMAND this case to the district court for further proceedings consistent with this opinion.