[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 20, 2006
THOMAS K. KAHN
CLERK

No. 05-11363
Non-Argument Calendar

_____

D. C. Docket No. 04-00163-CR-J-25-MCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BELAY REDDICK,
a.k.a. Unknown B,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 20, 2006)**

Before BLACK, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Belay Reddick appeals his 240-month sentence for one count of conspiracy

to pass or utter a false instrument, in violation of 18 U.S.C. §§ 371 and 514, and three counts of knowingly passing or uttering a false instrument, in violation of 18 U.S.C. § 514.  After review, we affirm.

## I. BACKGROUND

Between August 2003 and his arrest in May 2004, Reddick was involved in a conspiracy to produce counterfeit checks.  Reddick created counterfeit checks using computers belonging to his wife and to a co-conspirator, Charles Porter. Reddick also recruited and paid others to cash the checks at various banks and check-cashing establishments.  While participating in this counterfeit check scheme, Reddick was on supervised release after having served a 60-month federal prison term for a separate counterfeit check scheme.

Reddick's estranged wife, Carla Hughes, advised the Secret Service that Reddick was again counterfeiting checks and that Reddick planned to have Hughes negotiate several counterfeit checks.  While under surveillance on May 21, 2004, Reddick drove Hughes and a third individual, Benita Jones, to a bank.  After Jones entered the bank, law enforcement attempted to stop Reddick's car.  In an effort to elude police, Reddick drove through a Burger King parking lot and jumped from the car, which continued in motion and collided with the bushes in an adjoining parking lot.  Reddick was apprehended and arrested.

A search of Reddick's wife's computer revealed a software program used to manufacture checks and logs of the counterfeit checks made with the program totaling over $180,000. A search of co-conspirator Porter's home uncovered $5,500 in counterfeit checks and a computer that Porter rented to others, including Reddick. Porter's computer contained a log of counterfeit checks totaling an additional $48,917.13.

Without the benefit of a plea agreement, Reddick pled guilty to one count of conspiracy to pass or utter a false instrument, in violation of 18 U.S.C. §§ 371 and 514, and three counts of knowingly passing or uttering a false instrument, in violation of § 514. The Presentence Investigation Report ("PSI") recommended these enhancements: (1) a 12-level enhancement for a loss amount of $247,364.06; (2) a 4-level enhancement for Reddick's role as a leader or organizer; (3) a 2-level enhancement for obstruction of justice because Reddick wrote letters to his wife attempting to intimidate her and prevent her from testifying against him; (4) a 2-level enhancement for reckless endangerment during flight because Reddick jumped from his moving car when police chased him. The PSI calculated a total offense level of 27 and 23 criminal history points for a criminal history category of VI.

Reddick filed numerous written objections to the PSI, primarily asserting

that his sentence could not be enhanced based on facts neither proven to a jury nor admitted by him. Reddick also argued that his efforts to avoid police were insufficient to support the reckless endangerment enhancement.

At the sentencing hearing, Reddick raised additional objections to the PSI. First, Reddick denied involvement with 10 of the 35 co-conspirators identified in the PSI. After the government noted that Reddick did not contest at least five of the co-conspirators listed in the PSI, which was sufficient to support the leader/organizer role enhancement, the district court overruled the objection.

Second, Reddick objected to the PSI's loss calculation of $247,364.06. The loss calculation included $180,112.55 in checks logged on Reddick's computer, $12,782.03 in counterfeit checks cashed by Reddick's co-conspirators, $5,552.35 in counterfeit checks found in Porter's residence for a total of $198,446.93. The loss amount also included $48,917.13 in checks logged on Porter's computer. Reddick did not object to $198,446.93 of the loss, but argued that the PSI improperly included all of the check amounts logged on Porter's computer because that computer was used by others. In response, the government proffered that (1) the checks found on Porter's computer were sufficiently similar to checks Reddick had forged to be attributable to him, and (2) Porter had told investigators that, while he rented the computer to people other than Reddick, no one else, other than

4

one of Reddick's co-conspirators, used it to forge checks. The district court then overruled this objection without comment. The district court also overruled Reddick's written objection to the reckless endangerment enhancement, but sustained Reddick's written objection to the obstruction of justice enchantment. This resulted in a total offense level of 25, which, with a criminal history category of VI, yielded an advisory Guidelines range of 110 to 137 months' imprisonment.

The district court then advised the parties that, given Reddick's "horrible criminal history" and recidivism, it was considering imposing the maximum sentence, as follows:

> Well, let me – let me say this to you, and I'm only saying this to – to direct your comments. I think there is nothing that can be done to stop Mr. Reddick. I think he – if he gets five years, if he gets ten years, he's going to be back into doing this again. I think he has a horrible criminal history category. The fact that he's already been in federal prison for 60 months for this offense is extremely troubling to me, therefore, I am considering imposing the maximum sentence under the law in this case.

After Reddick argued for a sentence within the advisory Guidelines range of 110 to 137 months, the district court, in imposing a 240-month sentence, reviewed how Reddick had continuously committed fraud, theft, worthless check offenses, and counterfeit and forged security offenses. The district court also pointed out that Reddick had completed a 60-month federal sentence, then had his supervised release revoked in 2003 and still committed the instant offenses in 2003 and 2004,

5

while on supervised release. The district court found that Reddick had refused to stop his offenses and only maximum jail time would protect the public, stating:

> This – this man has been – his criminal history is – is horrible. He has 20 criminal history points for a lot of things but quite a bit of it involved the same type of – the same type of fraudulent-type offense and theft offense starting from age 18. I mean, he has worthless check charges, fraudulent use of credit cards, grand theft, forgery, uttering forgeries, more worthless checks, more grand thefts, obtaining a motor vehicle by fraud, the letters talk about some other insurance fraud, obtaining worthless checks again.
>
> And I think what's even more troubling to me is that in 1997 – with all of that in '98 he's sentenced to 60 months to the Bureau of Prisons for conspiracy to make and utter counterfeit and forged securities to be followed by three years supervised release, he was released in 2002 and revoked in 2003, and he's back again. I don't think he can be stopped.
>
> And I think in considering 3553, the only way to protect the public from further crimes from this defendant is to put him in prison for as long as I can, and the guidelines I think are . . . or the sentence that's called for in the guidelines is just totally inappropriate to do that considering his history.

Although the maximum sentence on count one is five years and the maximum sentence on counts two through four is twenty-five years, the district court imposed a sentence of 240 months or twenty years. This appeal followed.

## II. DISCUSSION

A.   **Booker**

Reddick argues that the district court committed Booker error by enhancing his sentence based on facts that were not proven to a jury and that he did not admit.

6

There is no Booker error here because the district court sentenced Reddick under an advisory rather than mandatory Guidelines scheme. See United States v. Chau, 426 F.3d 1318, 1323-24 (11th Cir. 2005); United States v. Rodriguez, 398 F.3d 1291, 1301 (11th Cir.), cert denied, 125 S. Ct. 2935 (2005). In addition, Reddick argues that, because the Guidelines were mandatory when he committed his offenses, application of the advisory Guidelines scheme to his sentence violates ex post facto and due process principles. We have held that no due process or ex post facto violations occur based on retroactive application of Booker's remedial opinion making the Guidelines advisory. See United States v. Duncan, 400 F.3d 1297, 1306-08 (11th Cir.), cert. denied, 126 S. Ct. 432 (2005); see also United States v. Martinez, 434 F.3d 1318, 1323 (11th Cir. 2006).[1]

**B.     Sentencing Enhancements**

Reddick alternatively argues that his sentencing enhancements were not supported by sufficient evidence. When a defendant challenges one of the factual bases for his sentence, the government must establish the disputed fact by a preponderance of the evidence, and this burden must be satisfied with "reliable and

---

[1]Reddick also argues that his due process rights were violated because the government failed to inform him that it would seek the sentencing enhancements until after he pled guilty and that the district court erred in applying the preponderance standard rather than the clear and convincing evidence standard in determining the facts underlying his sentencing enhancements. These arguments lack merit and warrant no further discussion.

7

specific evidence." United States v. Sepulveda, 115 F.3d 882, 890 (11th Cir. 1997) (citation omitted). The only enhancements to which Reddick challenged the factual basis were the organizer/leader enhancement and the enhancement for the $247,364.06 loss.[2] We find no reversible error with regard to these enhancements.[3]

As for the role enhancement, Reddick disputed his criminal involvement with only 10 of the 35 co-conspirators named in the PSI. Section 3B1.1 requires a two-level increase if "the defendant was an organizer or leader of a criminal activity that involved five or more participants. U.S.S.G. § 3B1.1(a). Given that Reddick admitted involvement with 25 of the co-conspirators identified in the PSI, the district court did not clearly err by imposing the organizer/leader role enhancement. See United States v. Hedges, 175 F.3d 1312, 1315 (11th Cir. 1999)

---

[2]Although Reddick objected to the reckless endangerment enhancement, he did not dispute the facts underlying that enhancement, i.e., that, while attempting to elude police, he jumped from a moving car that he had been driving through a Burger King parking lot. Instead, Reddick argued that immediate flight from arrest is insufficient to support the enhancement. He does not raise this argument on appeal.

[3]Booker did not alter the standards of review for Guidelines issues. United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005). We review for clear error a district court's factual finding that a defendant was a leader or organizer under U.S.S.G. § 3B1.1 and its loss calculation under the Guidelines. United States v. Ramirez, 426 F.3d 1344, 1355 (11th Cir. 2005) (U.S.S.G. § 3B1.1); United States v. McCrimmon, 362 F.3d 725, 728 (11th Cir. 2004) (loss calculation). Although Booker requires the district court to properly calculate the Guidelines range, if the district court erred in doing so, we are not required to remand for resentencing if the district court likely would have sentenced the defendant in the same way without the error. United States v. Scott, 441 F.3d 1322, 1329 (11th Cir. 2006).

(concluding that the district court may rely on any undisputed statements in the PSI even in the absence of supporting evidence).

As for the loss calculation, U.S.S.G. § 2B1.1 provides for a base offense level of 7 where, as here, the defendant was convicted of a crime involving counterfeit instruments that has a statutory maximum term of imprisonment of at least 20 years. U.S.S.G. § 2B1.1(a)(1). If either the actual or intended loss, whichever is greater, resulting from the offense exceeded $120,000 the offense level is increased by 10 levels. U.S.S.G. § 2B1.1(b)(1)(F) & cmt. n.3(A)(i)-(ii). If the loss exceeded $200,000, the offense level is increased by 12 levels. U.S.S.G. § 2B1.1(b)(1)(G). The district court's valuation of the loss need not be precise; a "reasonable estimate of the intended loss will be upheld on appeal." United States v. Dominguez, 109 F.3d 675, 676 (11th Cir. 1997) (addressing loss calculation under former U.S.S.G. § 2F1.1 now consolidated with U.S.S.G. § 2B1.1).

Here, Reddick did not dispute $198,446.93 of the loss calculation, which alone brought him close to the $200,000 amount needed to trigger the 12-level increase he received. As for the $48,917.13 worth of checks logged on Porter's computer, Reddick did not deny using that computer in his scheme, but objected only to being held responsible for all of the checks on that computer since others had access. Because the district court's valuation need only be a reasonable

estimate and given that only $1,553.07 in checks out of the $48,917.13 were needed to place Reddick over the $200,000 threshold, we cannot say that the district court's loss determination was clear error.

In any event, any error here was harmless because, considering the district court's statements at sentencing that Reddick needed the longest possible sentence due to his recidivism and the court's decision to impose an above-Guidelines sentence, it is highly unlikely the district court would have imposed a lesser sentence even absent any error in the loss calculation.

## C.    Booker Reasonableness

Reddick argues that his above-Guidelines sentence is unreasonable. After Booker, a sentencing court must consider the correctly calculated Guidelines range, but then, after consideration of the factors in 18 U.S.C. § 3553(a), may impose a more severe or more lenient sentence as long as that sentence is reasonable. United States v. Jordi, 418 F.3d 1212, 1215 (11th Cir.), cert. denied, 126 S. Ct. 812 (2005). We review a defendant's ultimate sentence, in its entirety, for unreasonableness in light of the § 3553(a) factors. United States v. Winingear, 422 F.3d 1241, 1245 (11th Cir. 2005).[4]

_____

[4]The factors in § 3553(a) include (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment, (4) the need to protect the public, and (5) the guideline range. 18 U.S.C. § 3553(a).

After review, we cannot say Reddick's 240-month sentence was unreasonable. The district court considered the § 3553(a) factors and determined, based on Reddick's extensive criminal history and recidivism, that a sentence within the Guidelines would be inadequate to protect the public and deter Reddick from continuing his counterfeit check schemes. A significant portion of Reddick's criminal history points were attributable to fraud-related crimes, such as passing worthless checks and using a fraudulent credit card. Indeed, Reddick's 23 criminal history points far exceeded the 13 points required to obtain a criminal history category of VI. See U.S.S.G. ch. 5, pt. A (sentencing table). Most troubling to the district court was the fact that Reddick began a new check counterfeiting scheme almost immediately upon having completed a 60-month sentence for his last check counterfeiting conviction and while still on supervised release. Although the district court contemplated imposing the longest sentence possible, the 240-month sentence it imposed was five years less than the statutory maximum sentence of 25 years. We find nothing on this record that convinces us that Reddick's sentence was unreasonable.

## D. Rule 32(h) Notice

Reddick also argues that the district court was required by Federal Rule of Criminal Procedure 32(h) to give him notice that it intended to sentence him above

11

the advisory Guidelines range.[5]  Because Reddick raises this argument for the first time on appeal, we review for plain error.  United States v. Paslay, 971 F.2d 667, 674 n.13 (11th Cir. 1992).

Rule 32(h) permits a sentencing court to depart from the applicable Guidelines range on a ground not identified in the PSI or in the government's pre-hearing submission only if it provides the defendant reasonable notice specifying the ground upon which it is contemplating a departure.  Fed. R. Crim. P. 32(h); see also Burns v. United States, 501 U.S. 129, 138-39, 111 S. Ct. 2182, 2187 (1991).  This Court has not yet addressed whether, post-Booker, Rule 32(h) requires a district court to give notice before imposing an above-Guidelines-range sentence in an advisory system as opposed to departing upward a mandatory Guidelines system.  However, at least one circuit has concluded that it does not.  See United States v. Egenberger, 424 F.3d 803, 805 (8th Cir. 2005).  Under these circumstances, where there is no binding or persuasive precedent to the contrary, any error was not plain.  See United States v. Baker, 432 F.3d 1189, 1207 (11th Cir. 2005) (explaining that for an error to be plain it must be obvious under current law).

---

[5]Reddick incorrectly characterizes the district court's 240-month sentence as an "upward departure."  The district court did not depart under the Guidelines.  Rather, the district court calculated the Guidelines range and then, after considering the § 3553(a) factors as required in Booker, selected a sentence above the advisory Guidelines range.

### III. CONCLUSION

For all these reasons, we affirm Reddick's 240-month sentence.[6]  However,

we remand this case to the district court so that the court can append a written

record of its sentencing findings to the PSI as required by Federal Rule of Criminal

Procedure 32(i)(3)(C).

**AFFIRMED and REMANDED.**

---

[6]Because the record is not sufficiently developed, we decline to address on direct appeal Reddick's claims that he received ineffective assistance of counsel when his sentencing counsel failed to preserve sentencing issues for appeal.  See United States v. Tyndale, 209 F.3d 1292, 1294 (11th Cir. 2000).