PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

v.                                              No. 00-4300

BOBBY LEE BELLAMY,
                    *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(CR-99-137-BR)

Argued: March 2, 2001

Decided: September 6, 2001

Before NIEMEYER, MICHAEL, and KING, Circuit Judges.

---

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Niemeyer joined. Judge Michael wrote an opinion concurring in part and concurring in the judgment.

---

## COUNSEL

**ARGUED:** George Alan DuBois, Assistant Federal Public Defender, Raleigh, North Carolina, for Appellant. Dennis M. Duffy, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, Raleigh, North Carolina, for Appellant. Janice McKenzie Cole, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

**OPINION**

KING, Circuit Judge:

Bobby Lee Bellamy appeals the sentence imposed by the district court on his convictions stemming from an incident where Bellamy, a 38-year-old convicted felon, brought a loaded handgun into a classroom of students attending Spring Lake Middle School just north of Fayetteville, North Carolina. The court departed upward a total of eight levels from the prescribed Guidelines range of 51-63 months, sentencing Bellamy to a 137-month term of imprisonment. Discerning no error on the part of the court below, we affirm its imposition of sentence.

I.

Without benefit of a plea agreement, Bellamy pleaded guilty to a two-count indictment charging him with illegal possession of a firearm in a school zone, as prohibited by 18 U.S.C. § 922(q)(2)(A), such possession alleged to have also violated 18 U.S.C. § 922(g)(1) by virtue of Bellamy's status as a convicted felon.[1] In advance of sentenc-

---

[1]Section 922 of the federal criminal code provides, in pertinent part:

(g)   It shall be unlawful for any person —

(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

. . .

to . . . possess in or affecting commerce, any firearm or ammunition[.]

The school zone provision, contained within the same section, specifies that:

(q) . . .

(2)(A) It shall be unlawful for any individual knowingly to possess a firearm that has moved in or that otherwise affects interstate or foreign commerce at a place the individual knows, or has reasonable cause to believe, is a school zone.

The maximum prison sentence for violating the school zone prohibition is five years, which "shall not run concurrently with any other term of

ing, the Government moved the district court for an upward departure, contending that (1) Bellamy had "brandished [the] firearm while in the school"; and (2) "the applicable guideline range understates [his] criminal history." J.A. 28.

Testimony at the sentencing hearing established that Bellamy, a resident of Horry County, South Carolina, had come to town to visit his girlfriend. The morning of August 16, 1999, however, found Bellamy not at his girlfriend's trailer, but at the one next door. While smoking crack with the second trailer's occupants, Bellamy became involved in a fight. In the wake of this altercation, Bellamy fled from the trailer park carrying a .25 caliber semi-automatic pistol. Bellamy continued to run for about three-quarters of a mile until he reached the school, where the first day of classes was underway.

Social studies teacher Evelyn Cannon was busily taking attendance when Bellamy entered her classroom and sat down at an empty desk, with the pistol in plain view of the surrounding students. After a few moments, Bellamy rose and approached Cannon. Appearing scared and nervous, Bellamy told Cannon that he was being pursued and asked for her help. Realizing that Bellamy was not a student, Cannon escorted him out of the room and into the adjoining hallway. With the promise of forthcoming assistance, Cannon persuaded Bellamy to accompany her to the principal's office.

Along the way, Bellamy became more agitated; he grabbed Cannon and tried to pull her close. Cannon suddenly noticed the pistol in Bellamy's hand, and she evaded his grasp. His attempt thus frustrated, Bellamy pointed the firearm at Cannon. Bellamy lowered the weapon a few moments later, as Cannon convinced him to continue with her toward their destination. Upon arriving at the principal's office, Bellamy surrendered the pistol and waited for the authorities to arrive.

---

imprisonment imposed under any other provision of law." 18 U.S.C. § 924(a)(4). The district court therefore apportioned Bellamy's sentence to run for 33 months on the school zone conviction, with a consecutive term of 104 months on the felon-in-possession conviction. *See* United States Sentencing Commission, *Guidelines Manual*, § 2K2.5, comment. (n.3) (Nov. 1998).

II.

A.

1.

Different provisions of the Guidelines relate to each of the two offenses of conviction. Section 2K2.1, broadly entitled (in part) "Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition," governs sentencing for Bellamy's felon-in-possession conviction, while the more narrowly focused section 2K2.5 applies to Bellamy's conviction under § 922(q). This latter section dictates sentencing for, inter alia, "Possession or Discharge of Firearm in [a] School Zone."

Bellamy's base offense level pursuant to § 2K2.1 was 20, because he had one qualifying prior conviction of a crime of violence. *See* United States Sentencing Commission, *Guidelines Manual*, § 2K2.1(a)(4)(A) (Nov. 1998). The offense level computed under § 2K2.5 was considerably less: a base of 6, *see* § 2K2.5(a), adjusted upward to 8 because the firearm was possessed in a school zone (as opposed to a federal facility, to which § 2K2.5 also applies), *see* § 2K2.5(b)(1)(B). Inasmuch as both counts involved substantially the same harm, they were grouped together, *see* § 3D1.2(a). Consequently, the higher of the two offense levels became applicable to the Group as a whole. *See* § 3D1.3(a). With a three-level deduction for acceptance of responsibility, *see* § 3E1.1(b)(2), Bellamy's adjusted offense level was calculated at 17, which, in conjunction with a Criminal History Category of VI, resulted in a sentencing range of 51-63 months.

In support of its motion for an upward departure, the Government argued that Bellamy's brandishing of the pistol was an "encouraged" basis for imposing a longer sentence. *See Koon v. United States*, 518 U.S. 81, 94 (1996) (describing encouraged bases as those "the Commission has not been able to take into account fully in formulating the guidelines") (quoting USSG § 5K2.0). The Government grounded its argument in the text of the Commentary to the school zone guideline, which provides: "Where the firearm was brandished, discharged, or otherwise used, in a . . . school zone, *and the cross reference from*

*subsection (c)(1) does not apply*, an upward departure may be warranted." USSG § 2K2.5, comment. (n.4) (emphasis added).

The "cross-reference from subsection (c)(1)" addresses, among other things, the situation where the defendant possesses the firearm at issue "in connection with the commission or attempted commission of another offense, or . . . with knowledge or intent that it would be used in connection with another offense[.]" § 2K2.5(c)(1). In such a case, the guideline directs the sentencing court to compute the offense level of that other offense in light of § 2X1.1 (Attempt, Solicitation, or Conspiracy). If the resultant level for the inchoate offense exceeds that of the firearms offense under § 2K2.5, subsection (c)(1) requires the defendant to be sentenced in accordance with the former. In other words, the cross-reference "applies."

2.

Bellamy devotes much of his opening brief to the argument that his possession of the pistol in the school zone was "in connection with the commission . . . of another offense," namely the felon-in-possession charge of which he was also convicted. Bellamy urges that the cross-reference to § 2X1.1 should therefore apply, leaving unfulfilled a necessary condition to the departure contemplated by Application Note 4 to § 2K2.5. The Government, for its part, appears to have abandoned its position before the district court and conceded that the probation officer, in preparing the presentence investigation report ("PSR"), should have applied the cross-reference. *See* Br. of United States, at 13 n.4.

Neither Bellamy nor the Government, however, come to grips with the vexing question of whether § 2X1.1 can, by its very terms, ever apply to a completed offense like Bellamy's, where a felon has come into actual possession of a firearm. *See United States v. Egemonye*, 62 F.3d 425, 429 (1st Cir. 1995) ("U.S.S.G. § 2X1.1. is concerned with determining the offense level for an *attempt* or *conspiracy* . . . . Read literally, section 2X1.1 is not relevant to the present case because [most of the charges] involved completed substantive offenses . . . and the conspiracy thus embraced fully completed crimes.") (emphasis in original). The proper application of § 2K2.5(c)(1) in this instance is not easily discerned, and it might

plausibly be argued that its reference to "the commission . . . of another offense" pertains to nothing more than the subject matter of § 2X1.1, that is, conspiracies and solicitations.

3.

In any event, we need not decide this matter today. As the Government correctly points out, the district court did not depart on the narrow basis afforded by § 2K2.5. The court instead relied on the general grounds for departure expressed elsewhere in the Guidelines:

> Pursuant to United States Sentencing Guideline 5K2.0, a factor may be listed as a specific offense characteristic under one guideline but not under all guidelines. Simply because it is not [listed] does not mean there may not be circumstances when that factor would be relevant to sentencing. The court finds that this is such a circumstance. The defendant brandished a firearm in a crowded school classroom and while accompanying a teacher through a school hallway. . . .

J.A. 103. The first two sentences of the district court's bench ruling accurately paraphrase the language of § 5K2.0; the second two succinctly state the court's findings in applying that guideline.[2]

---

[2]Bellamy expresses some skepticism that the district court actually based its departure decision on § 5K2.0, rather than § 2K2.5, asserting that "[n]either the government or the PSR ever suggested that an upward departure was warranted because Mr. Bellamy brandished a weapon in connection with the felon-in-possession offense. . . ." Reply Br. of Appellant, at 4. Of course, the district court was not bound to adopt the probation officer's recommendation or the Government's legal argument. We think it dispositive that (1) the court specifically referenced § 5K2.0 to the exclusion of § 2K2.5; and (2) a departure pursuant to § 2K2.5 alone would have been a futile exercise, inasmuch as the starting point was Offense Level 8. Any reasonable departure under § 2K2.5 would have fallen far short of the base offense level of 20 specified by § 2K2.1; thus, as provided by the grouping rules, *see supra* Part II.A.1, the length of Bellamy's imprisonment would still have been governed by the latter guideline. *See supra* note 1.

The district court's rationale is easily understood. The felon-in-possession guideline, § 2K2.1, does not distinguish the situation involving brandishing of the subject firearm from that where the weapon is passively possessed. Elsewhere in the Guidelines, however, the distinction is recognized. For example, the guideline governing aggravated assaults provides for a three-level enhancement "if a dangerous weapon (including a firearm) was brandished." USSG § 2A2.2(b)(2)(C). In robbery cases, the enhancement is five levels "if a firearm was brandished, displayed, or possessed." USSG § 2B3.1(b)(2)(C). The inclusion of brandishing as a specific offense characteristic in certain guidelines strongly suggests that it would be an encouraged factor supporting upward departures in appropriate cases involving other offenses. *See Koon*, 518 U.S. at 96 ("If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account.").

It is hardly surprising that the district court, confronted with a situation where the defendant had displayed a loaded pistol in a classroom full of eighth-graders and later pointed it at their teacher, found this particular felon-in-possession case unusual, that is, outside the "'heartland' . . . of typical cases embodying the conduct that each guideline describes." USSG Ch. 1, Pt. A, intro. comment. 4(b). The brandishing in this case thus satisfied the statutory requirement of an "aggravating circumstance . . . of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). The court below, "analogiz[ing Bellamy's conduct] to brandishing a firearm during a robbery," J.A. 103, departed upward five levels.[3]

---

[3]Bellamy contends that the district court was mistaken to treat his brandishing as if it had occurred during a robbery rather than during an aggravated assault, maintaining that the three-level departure suggested by the latter, *see* discussion in text *supra*, would have more accurately reflected the gravity of his conduct. We reject this contention. Once a departure is determined to be appropriate in a particular case, the extent thereof need only be "reasonable under the circumstances." *United States v. Terry*, 142 F.3d 702, 707 (4th Cir. 1998) (citing 18 U.S.C. § 3742(f)(2)). The guideline under which Bellamy was sentenced specifies a minimum four-level enhancement "[i]f the defendant used or pos-

B.

   The difficulty in this case arises not from the district court's sub-
stantive decision to depart, but instead from the procedural means by
which the departure was accomplished. In *Burns v. United States*, 501
U.S. 129 (1991), the Supreme Court held that

> before a district court can depart upward on a ground not
> identified as a ground for upward departure either in the pre-
> sentence report or in a prehearing submission by the Gov-
> ernment, [Federal Rule of Criminal Procedure] 32 requires
> that the district court give the parties reasonable notice that
> it is contemplating such a ruling. This notice must specifi-
> cally identify the ground on which the district court is con-
> templating an upward departure.

*Id.* at 138-39. The above excerpt prompts the question, "What,
exactly, is a ground?" Is it the factual basis underlying the proposed
departure, the legal predicate therefor found in the Guidelines, or
must it be nothing less than the latter as applied to the former?[4]

   If a criminal defendant need only have notice of the facts upon
which the district court may base a departure, then surely the dictates
of *Burns* were satisfied here. The PSR specifically identified Bella-
my's brandishing of the pistol as a factor potentially warranting an

---

sessed any firearm . . . in connection with another felony offense. . . ."
§ 2K2.1(b)(5). In this case, Bellamy did more than merely "use" or "pos-
sess" his pistol — he brandished it, creating an especially dangerous situ-
ation. Under the circumstances presented here, we cannot say that the
district court unreasonably decided that Bellamy's actions justified an
additional level.

   [4]*Compare Burns*, 501 U.S. at 134 ("Federal Rule of Criminal Proce-
dure 32 provides for focused, adversarial development of the *factual and
legal issues relevant to determining the appropriate Guidelines sen-
tence.*") (emphasis added), *with id.* at 135 ("In the ordinary case, the pre-
sentence report or the Government's own recommendation will notify
the defendant that an upward departure will be at issue *and of the facts
that allegedly support such a departure.*") (emphasis added).

upward departure, and the government's motion with respect thereto argues the point extensively. Indeed, on the two occasions where we have vacated a defendant's sentence in light of *Burns*, we found it dispositive that the court had ruled prior to giving any notice that it would depart, or of the particular facts in support of its decision. *See United States v. Maddox*, 48 F.3d 791, 798-99 (4th Cir. 1995) (downward departure for "extraordinary family ties" vacated where issue raised by district court sua sponte); *United States v. Maxton*, 940 F.2d 103, 106 (4th Cir. 1991) (upward departure for "extreme recidivism" vacated as defendant lacked notice of court's sua sponte ruling).

Assuming, however, that *Burns* also requires that the defendant be notified in advance of the legal justification for the court's ruling, there was no deficiency in this case. As made plain by the Supreme Court, the general provisions of the Guidelines (including the policy statement embodied in § 5K2.0, on which the district court relied) mandate that departures be reserved for cases outside the heartland, and then only after the asserted basis has been identified and analyzed as an encouraged, discouraged, or unmentioned factor. *See Koon*, 518 U.S. at 95-96. Every single departure must fulfill these criteria, regardless of whether the impetus to depart originates from a judge, prosecutor, or probation officer, or whether the possibility is suggested by the Guidelines themselves.

Upon being informed in the PSR and by the Government that, pursuant to Application Note 4 of § 2K2.5, "an upward departure may be warranted" for his having brandished a firearm, Bellamy should have been prepared to argue not only the discrete defense that the Note was inapplicable in his case, but also that — as a general matter and notwithstanding its treatment in other sections of the Guidelines — the brandishing in no way rendered his case exceptional. A different result might obtain had Bellamy merely had notice of a potential departure on general principles and the district court, for the first time at the sentencing hearing, indicated that the Application Note would somehow bear on its analysis. But that is not the situation we face here. The *Koon* methodology inheres in each departure decision, and defendants and their counsel have had notice of that fact since 1996.

Bellamy's complaint that he was deprived of *Burns* notice is made all the more unavailing by his failure to contemporaneously object to

the district court's ruling. We may therefore disturb Bellamy's sentence only if we discover its imposition to have been plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Paslay*, 971 F.2d 667, 674 n.13 (11th Cir. 1992) (noting that, in absence of timely objection, a *Burns* violation is ordinarily reviewable under the plain error standard). The necessary conditions are fulfilled if the court below (1) committed "error"; that (2) was "plain"; and (3) affected "substantial rights"; thereby implicating (4) the "fairness, integrity, or public reputation of judicial proceedings" to the extent that we should exercise our discretion to correct the oversight. *See United States v. Strickland*, 245 F.3d 368, 376 (4th Cir. 2001) (citations omitted).

As noted above, we perceive no error, plain or otherwise, in Bellamy's sentencing. Even if he were somehow led astray by the § 2K2.5 red herring proffered by the probation officer and argued by the Government, Bellamy was bound to return his focus to the basic tenets regarding departures found in the Guidelines and explained by the Supreme Court.[5] We thus affirm the lower court's five-level departure premised on Bellamy having brandished his pistol at Spring Lake Middle School.

### III.

We turn finally to the district court's decision to depart upward an additional three levels upon finding that Bellamy's Criminal History Category of VI, albeit the maximum recognized by the Guidelines, nonetheless under-represented his past criminal conduct and did not adequately reflect his likelihood of recidivism. The possibility that such a scenario would occur was acknowledged by the drafters:

> The Commission contemplates that there may, on occasion, be a case of an egregious, serious criminal record in which even the guideline range for Criminal History Category VI is not adequate to reflect the seriousness of the defendant's

---

[5]Alternatively, if Bellamy could demonstrate error on the part of the court below, we would conclude that he suffered no resultant prejudice such that a substantial right was affected. There is no indication that the upward departure was substantively erroneous, or that the district court would impose a different sentence on remand.

criminal history. In such a case, a departure above the guide-
line range for a defendant with Criminal History Category
VI may be warranted. . . . [T]he court should structure the
departure by moving incrementally down the sentencing
table to the next higher offense level in Criminal History
Category VI until it finds a guideline range appropriate to
the case.

USSG § 4A1.3, p.s.; *see United States v. Cash*, 983 F.2d 558 (4th Cir.
1992) (prescribing analysis for § 4A1.3 departures based on inade-
quacy of Criminal History Category VI).

Bellamy maintains that these types of departures are "discouraged"
within the meaning of *Koon* because they are confined by the Guide-
line language to "egregious, serious" cases. Bellamy's argument, of
course, begs the question. A court's conclusion that even Category VI
fails to adequately describe a particular criminal history necessarily
entails a finding that the defendant's record is both egregious and seri-
ous.[6] In such a case, the upward departure pursuant to § 4A1.3 is actu-
ally encouraged, not discouraged. We are unpersuaded that the district
court abused its discretion in determining that Bellamy's criminal his-
tory merited a three-level departure. *See Koon*, 518 U.S. at 100
(departure decisions reviewed under unitary abuse-of-discretion stan-
dard).

## IV.

Pursuant to the foregoing, we affirm the sentence imposed on Bel-
lamy by the district court.

*AFFIRMED*

---

[6]Here, the district court specifically "looked to the two non-scored
remote convictions found in paragraphs 10 and 11 of the presentence
report and assigned three criminal history points to each of these convic-
tions. . . ." J.A. 103. The PSR documents Bellamy's guilty pleas to grand
larceny in 1978 and common law robbery in 1982. The former took place
at a convenience store, and the latter entailed the attempted armed rob-
bery of two golfers.

MICHAEL, Circuit Judge, concurring in part and concurring in the judgment:

I concur in the judgment and in all but part II of the majority opinion. In part II the majority holds that because Bellamy knew that the government was seeking an upward departure under § 2K2.5 of the Sentencing Guidelines for brandishing during his offense of possession of a firearm in a school zone, he had sufficient notice that the district court might depart under § 5K2.0 of the Guidelines for brandishing in connection with the separate felon-in-possession offense. The majority therefore concludes that the district court committed "no error, plain or otherwise, in Bellamy's sentencing." *Ante* at 10. I respectfully disagree. The district court's departure pursuant to § 5K2.0 constitutes plain error because the court failed to provide notice of its intent to depart on that ground, as required by *Burns v. United States*, 501 U.S. 129 (1991). Although the court committed plain error, I concur in the judgment because Bellamy has not established that the plain error affected his substantial rights.

Bellamy was convicted of two separate offenses: (1) possession of a firearm in a school zone in violation of 18 U.S.C. § 922(q) and (2) possession of a firearm by a felon in violation of 18 U.S.C. § 922(g). After Bellamy was convicted, the government moved for, and the presentence report recommended, a departure under Application Note 4 of § 2K2.5 because he had brandished his pistol while committing the offense of possession of a firearm in a school zone. Application Note 4 of § 2K2.5 provides, "Where the firearm was brandished, discharged, or otherwise used, in a . . . school zone, and the cross reference from subsection (c)(1) [of § 2K2.5] does not apply, an upward departure may be warranted." At sentencing the district court did not consider the motion and recommendation for an upward departure under § 2K2.5 for brandishing the firearm in a school zone. Instead, the court departed under § 5K2.0 for brandishing in connection with the separate felon-in-possession offense. Bellamy, however, did not receive prior notice that a § 5K2.0 departure was being considered. Neither the presentence report nor the government had recommended a departure under § 5K2.0, and Bellamy did not learn of the court's intention to depart under that section until sentencing, when the court departed on its own under § 5K2.0.

The district court's failure to notify Bellamy of its intention to depart under § 5K2.0 for the felon-in-possession offense constitutes plain error. In *Burns v. United States* the Supreme Court held that:

> before a district court can depart upward *on a ground not identified as a ground for departure either in the presentence report or in a prehearing submission by the Government*, Rule 32 requires that the district court give the parties reasonable notice that it is contemplating such a ruling. This notice must *specifically identify* the ground on which the district court is contemplating an upward departure.

501 U.S. 129, 138-39 (1991) (emphasis added). Notice is essential because it allows the defendant a full and fair opportunity to challenge a proposed departure. *See id.* at 136 ("'Th[e] right to be heard has little reality or worth unless one is informed' that a decision is contemplated." (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (alteration in original)). For notice to be effective, it must allow the opportunity "for focused, adversarial development of the factual and legal issues relevant to determining the appropriate Guidelines sentence." *Id.* at 134. Here, neither the presentence report nor the government's motion suggested a departure under § 5K2.0 for the felon-in-possession offense. Bellamy only had notice of the recommendation to depart under § 2K2.5 for the separate crime of possession of a firearm in a school zone. The district court completely failed to provide notice that identified § 5K2.0 as the specific ground on which it intended to depart.

The majority contends that because Bellamy knew that the presentence report and the government recommended a departure under § 2K2.5 for the offense of possession of a firearm in a school zone, he had notice that the district court contemplated departure under § 5K2.0 for the separate felon-in-possession offense. The majority says that in every departure decision (whether it be under § 2K2.5, the general departure provision of § 5K2.0, or otherwise), a defendant must be prepared to argue that his case does not fall outside the heartland of situations encompassed within an applicable guideline. *See ante* at 9. Thus, the majority decides that Bellamy had notice of a potential § 5K2.0 departure because he "should have been prepared to argue not only the discrete defense [that Application Note 4 of

§ 2K2.5 did not apply], but also that—as a general matter and not-withstanding its treatment in other sections of the Guidelines—the brandishing in no way rendered his case exceptional." *Ante* at 9. In other words, because Bellamy had to be prepared to argue that his case was not exceptional for a § 2K2.5 departure on one offense, he should have been prepared to argue that his case was not exceptional for a § 5K2.0 departure on the other offense.

Even if, as the majority suggests, Bellamy was in a position to argue that his case was not outside the heartland of felon-in-possession cases, this does not mean that the district court did not commit an error under *Burns*. The majority's point, I believe, goes to the question of whether the court's failure to provide notice affected Bellamy's substantial rights. *See United States v. Cedelle*, 89 F.3d 181, 184 (4th Cir. 1996) (noting that under plain error analysis, the "asserted defect in the trial proceedings must, in fact, be error; the error must be plain; and, it must affect the substantial rights of the defendant"). The district court failed to notify Bellamy of its intent to depart under § 5K2.0 for the felon-in-possession offense, and this constitutes plain error. *See Burns*, 501 U.S. at 138-39 (holding that the notice of departure "must *specifically identify* the ground on which the district court is contemplating an upward departure" (emphasis added)). The majority's assertion that Bellamy should have been prepared to argue, as a general matter, that his case was unexceptional only tends to show that the district court's error did not prejudice Bellamy. Although Bellamy did not have notice of the court's intent to depart, he is not prejudiced (1) because he should have been equipped to argue to the district court that his conduct was not outside the heartland of felon-in-possession cases and (2) because he has not been able to explain to us why his conduct was not outside this heartland.

Again, the Supreme Court made it clear in *Burns* that "before a district court can depart upward on a ground not identified . . . either in the presentence report or in a prehearing submission by the Government," the court *must* give the parties reasonable notice that "specifically identif[ies]" the contemplated grounds for departure. *Burns*, 501 U.S. at 138-39. Because no notice was given on the § 5K2.0 departure, I would hold that the district court committed a *Burns* error. Nevertheless, I agree with the majority's conclusion that Bellamy is

not entitled to relief. To obtain relief under plain error analysis, Bellamy must prove that the district court's error "affected his substantial rights, *i.e.*, that it was prejudicial." *United States v. Hastings*, 134 F.3d 235, 240 (4th Cir. 1998). Here, Bellamy has failed to show that the district court's *Burns* error affected his substantial rights. First, as the majority points out, Bellamy was in a position to argue that his case was not outside the heartland of felon-in-possession cases. This is because the argument he would have to make to avoid a departure under § 2K2.5 is substantially the same as the argument he would have to make to avoid a departure under § 5K2.0. In both instances, Bellamy would have to show that his acts of brandishing a firearm in a crowded school and pointing a firearm at a school teacher did not constitute exceptional conduct. *See United States v. Barber*, 119 F.3d 276, 281 (4th Cir. 1997) ("[T]he sentencing court may depart only if it concludes that the factor is present to such an exceptional or extraordinary degree that it is outside the heartland of situations encompassed within the applicable guideline."). Because the arguments under § 2K2.5 and § 5K2.0 are essentially the same and Bellamy had notice of a potential departure under § 2K2.5, he was in a position to argue that his case was not exceptional under § 5K2.0. Second, Bellamy has not offered any indication that his conduct was within the heartland of felon-in-possession cases. For these reasons, the district court's error in failing to give the required notice did not prejudice Bellamy. Accordingly, I concur in the judgment.