**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

v.                                                                       No. 01-4743

RANDY CLAYTON BARRY,
           *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CR-00-148-BO)

Argued: September 23, 2002

Decided: November 8, 2002

Before WILKINSON, Chief Judge, TRAXLER, Circuit Judge, and
Claude M. HILTON, Chief United States District Judge for the
Eastern District of Virginia, sitting by designation.

---

Affirmed in part, vacated in part, and remanded by unpublished per
curiam opinion.

---

## COUNSEL

**ARGUED:** Gregory John Ramage, LAW OFFICE OF GREGORY J.
RAMAGE, Raleigh, North Carolina, for Appellant. Thomas B. Mur-
phy, Assistant United States Attorney, Raleigh, North Carolina, for
Appellee. **ON BRIEF:** John Stuart Bruce, United States Attorney,
Anne M. Hayes, Assistant United States Attorney, Raleigh, North
Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Randy Clayton Barry was convicted of carjacking resulting in serious bodily injury, *see* 18 U.S.C.A. §§ 2119(2)(West 2000), and of aiding and abetting the brandishing of a firearm by a convicted felon during a crime of violence, *see* 18 U.S.C.A. § 924(c)(1)(A)(ii) (West 2000). The district court sentenced Barry to 300 months for the carjacking conviction and 240 months for the firearm conviction to be served consecutively. Barry now appeals his carjacking conviction, arguing that the evidence was insufficient to establish "serious bodily injury." He also appeals the court's *sua sponte* upward departure on his firearm sentence. We find that a reasonable jury could have determined that Barry's victim suffered "serious bodily injury" and affirm the carjacking conviction. However, because the district court upwardly departed from the Sentencing Guidelines without giving reasonable notice of its intention to do so, we vacate and remand for resentencing on the firearm conviction.

### I.

On June 25, 2000, 63-year-old Johnny Bunton emerged from his 1985 Cadillac in the parking lot of a Burger King in Spring Lake, North Carolina. Barry and an accomplice walked over to Bunton's car, where Barry's accomplice pointed a shotgun at Bunton. Barry shoved Bunton against the car, frisked him, and forced him into the back seat. Barry's accomplice then sat next to Bunton, holding the shotgun to Bunton's midsection while Barry drove Bunton's car from the restaurant's parking lot.

Fearing for his life, Bunton tried to wrestle the shotgun from Barry's accomplice. When this happened, Barry slammed on the brakes, turned around in the front seat, and began to beat Bunton in the face with his fists, breaking Bunton's glasses and causing his face

to bleed. Barry then told his accomplice to "get this over with," J.A. 30, and ordered Bunton out of the car. Barry then repeated the admonition to "get rid of him." J.A. 31. Barry's accomplice forced Bunton to kneel, struck him on the back of the head four or five times with the butt of the shotgun, and left him lying in the road. Barry and his accomplice then fled the scene in Bunton's car.

Bunton was able to make his way to a nearby house, where the occupants called an ambulance. The emergency medical technician ("EMT") who arrived treated Bunton for lacerations on his face and hematomas to the side and back of his head and recorded that Bunton's blood pressure was 190/100, which was "cause for alarm." J.A. 54. Despite repeated urging from the EMT, Bunton refused to go to the hospital because his insurance card and money, as well as his heart medication, had been taken along with the carjacked Cadillac. Bunton's head remained swollen for three weeks after the incident and, since the carjacking, he "shakes" when he writes. J.A. 38. He has sought help for the shaking problem at a Veterans Administration hospital to no avail.

Using a special verdict form, the jury convicted Barry of carjacking and brandishing a firearm. At Barry's sentencing hearing, the court adopted without objection the factual findings and guideline applications in the Presentence Report ("PSR"). The PSR provided the correct range of imprisonment for carjacking, but failed to note that the Guidelines sentence for the firearm offense was "the *minimum term* of imprisonment required by statute." U.S.S.G. § 2K2.4(a)(2) (2000) (emphasis added). In this case, the statutory minimum sentence was 84 months. The district judge sentenced Barry to 300 months for the carjacking, which was within the Sentencing Guidelines range, and to a consecutive 240 months for the firearm violation. No objection was made at the time to the sentences.

II.

A.

Barry first challenges the sufficiency of the evidence to support the jury's finding that he inflicted "serious bodily injury" on Bunton in the course of the carjacking. In reviewing a sufficiency of the evi-

dence claim for a criminal conviction, the verdict of the jury must be sustained if there is substantial evidence, taking the view most favorable to the government. *See United States v. Brothers Constr. Co. of Ohio*, 219 F.3d 300, 312 (4th Cir.), *cert. denied*, 531 U.S. 1037 (2000).

Barry asserts that there was insufficient evidence presented at trial for the jury to find "serious bodily injury," and that at most the evidence showed only "bodily injury." We disagree.

Under the carjacking statute, "serious bodily injury" is defined as bodily injury which involves:

    (A)   a substantial risk of death;

    (B)   extreme physical pain;

    (C)   protracted and obvious disfigurement; or

    (D)   protracted loss or impairment of the function of a bodily member, organ, or mental faculty. . . .

18 U.S.C.A. § 1365(g)(3) (West 2000). The statute distinguishes "bodily injury" as —

    (A)   a cut, abrasion, bruise, burn, or disfigurement;

    (B)   physical pain;

    (C)   illness;

    (D)   impairment of the function of a bodily member, organ, or mental faculty; or

    (E)   any other injury to the body, no matter how temporary.

18 U.S.C.A. § 1365(g)(4) (West 2000).

We are satisfied that a reasonable jury could have found that the injuries inflicted on Bunton were serious bodily injuries, because they

involved a substantial risk of death and protracted loss or impairment of the function of a bodily member. The repeated, violent blows Bunton sustained to the back of his head from the butt of the shotgun, accompanied by the abandonment of Bunton in the road after the brutal beating, presented a substantial risk of death, particularly when all of this caused Bunton's blood pressure to be elevated to a dangerously high level at a time when he was deprived of his heart medication. This constitutes persuasive evidence from which the jury could reasonably find that Bunton's injuries were life threatening.

The government also supplied sufficient proof that Bunton suffered a protracted impairment. The permanent shaking affecting his ability to write demonstrates prolonged damage to the function of a bodily member, organ, or mental faculty that the jury could rationally attribute to the injuries Bunton sustained during the carjacking. Given the testimony from Bunton as to the commencement of the shaking, its continued existence, and the lack of foreseeable termination, we believe the evidence sufficient for the jury to conclude that this impairment was, and would be, protracted.

In sum, the evidence was sufficient for the jury to conclude that Bunton's injuries presented a substantial risk of death and that his impairment was prolonged. A reasonable jury could, and did, find that Bunton suffered serious bodily injury.

B.

Barry also contends that the district court erred in departing upward from the Sentencing Guidelines without prior notice. Apparently, the court believed that there was no specific Guideline sentence for Barry's handgun conviction and that Barry could be sentenced anywhere within the statutory range of seven years to life. In fact, the Guidelines state that "the guideline sentence is the minimum term of imprisonment required by statute," U.S.S.G. § 2K2.4(a)(2), which in this case would have meant a sentence of 84 months. *See* 18 U.S.C.A. 924(c). Thus, the court's sentence of 240 months amounted to a substantial upward departure for which Barry had received no prior notice. The PSR had stated that there was no basis to suggest that a departure was warranted and the government had not requested a

departure, but simply had asked that Barry be sentenced at the "upper end" of the Guidelines range. J.A. 114.

In *Burns v. United States*, 501 U.S. 129 (1991), the Supreme Court held that a sentencing court may not depart upward for a reason not identified in the PSR or in a government departure motion without first giving the defendant reasonable notice that it is considering departure on a specific ground. *See id.* at 138; *see also United States v. Maddox*, 48 F.3d 791, 799 (4th Cir. 1995); *United States v. Maxton*, 940 F.2d 103, 106 (4th Cir. 1991). Because Barry did not object to the departure at the sentencing hearing, we review the court's failure to comply with *Burns* for plain error. *See United States v. Olano*, 507 U.S. 725, 731-32 (1993); *United States v. Bellamy*, 264 F.3d 448, 455 (4th Cir. 2001), *cert. denied*, 122 S.Ct. 1097 (2002). The necessary conditions are fulfilled if the court below "(1) committed error; that (2) was plain; and (3) affected the defendant's substantial rights; thereby implicating (4) the fairness, integrity, or public reputation of judicial proceedings to the extent that we should exercise our discretion to correct the oversight." *Bellamy*, 264 F.3d at 455 (internal quotation marks omitted). We examine each element in turn.

The court's departure constitutes error that was plain because the court failed to provide reasonable notice of its intent to depart and the specific grounds on which the court contemplated the upward departure. *See Burns*, 501 U.S. at 138-39. To obtain relief, however, Barry must show that the district court's error "affected his substantial rights, *i.e.*, that it was prejudicial." *United States v. Hastings*, 134 F.3d 235, 240 (4th Cir. 1998). Here, the lack of notice denied Barry the opportunity to prepare arguments to address the grounds for departure offered by the court at the hearing. "When a dispute exists about any factor important to the sentencing determination, the court must ensure that the parties have an adequate opportunity to present relevant information." U.S.S.G. § 6A1.3, p.s., comment.; *see also Burns*, 501 U.S. at 133. An adequate opportunity to present relevant information requires adequate notice to enable the defense — or the government — to prepare arguments. Moreover, the departure in this case clearly affected Barry's substantial rights by nearly tripling his sentence from the Guidelines prescription of 84 months to 240 months. Such an increase may be merited in cases where the defendant has a substantial history of violence or drug-related crimes. *See*

U.S.S.G. § 2K2.4, comment. (n.1). Under *Burns*, however, notice is required before a court makes such a departure in order to afford the defendant a chance to prepare for the reasons under consideration by the court.

The departure also implicates the fourth prong of the plain error analysis — namely, the "fairness, integrity, or public reputation of judicial proceedings." *Bellamy*, 264 F.3d at 455 (internal quotation marks omitted). Before the implementation of the Guidelines, "factors relevant to sentencing were often determined in an informal fashion." U.S.S.G. § 6A1.3, p.s., comment. The Guidelines were conceived to take the guesswork out of sentencing — both for the court and for the parties. Here, the defendant was confronted with an upward departure with no notice that the court intended to depart from the Guidelines and with no effective opportunity to address the specific reasons given for that departure. We therefore must vacate Barry's sentence and remand for resentencing.

### III.

In sum, we conclude that the evidence is sufficient to support Barry's carjacking conviction. The court's *sua sponte* departure from the Guidelines on Barry's firearm conviction, however, compels us to vacate that portion of the sentence and remand for resentencing. We express no opinion on the merits of the departure. Should the district court again wish to depart from the Guidelines sentence, the court should give the parties reasonable advance notice and should describe the grounds for the possible departure.

*AFFIRMED IN PART, VACATED*
*IN PART, AND REMANDED*