**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-4495**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

HUNTER CLARK LUPPOLD,

Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Bluefield.  Thomas E. Johnston, District Judge.  (1:06-cr-00221)

Submitted:  November 30, 2007          Decided:  December 21, 2007

Before WILKINSON, NIEMEYER, and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

S. Benjamin Bryant, CAREY, SCOTT & DOUGLAS, PLLC, Charleston, West Virginia, for Appellant.    Charles  T.  Miller,  United  States Attorney,  John  K.  Webb,  Assistant  United  States  Attorney, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Hunter Clark Luppold pled guilty to interstate transportation of stolen goods valued at more than $5000, in violation of 18 U.S.C. §§ 2314, 2 (2000).  In sentencing Luppold, the district court departed upward by two levels pursuant to U.S. Sentencing Guidelines Manual § 2B1.1, comment. (n.19) (2006), and imposed a sentence of forty-two months imprisonment.  On appeal, Luppold argues that he was not given notice of the court's intention to depart on certain grounds, contests the court's decision to depart and the extent of the departure, and also contends that the court clearly erred in finding that he had an aggravated role in the offense.  See USSG § 3B1.1(c).  We affirm.

Between June 2005 and February 2006, Luppold, with the aid of Joshua Shutt and Joshua Honaker, broke into at least twenty remote switch boxes in West Virginia owned by Frontier Corporation (a subsidiary of Citizens Communications) and Verizon Communications.  They stole more than 1200 telecommunications computer cards and circuit boards and sold at least 189 of them to a company in Florida.  The cost of repairs resulted in a loss to Frontier and Verizon totaling more than $400,000.  The offense also resulted in repeated loss of telephone and cellular phone service in areas of West Virginia and Virginia.  At the time, Luppold was nineteen years old and a student at Concord University.  Initially, Luppold and Shutt committed the thefts together.  After Shutt was

- 2 -

killed in a car accident in October 2005, Luppold asked Honaker if he wanted to earn money by driving for him. Honaker accepted the invitation. He lived with Luppold and was generally aware of what Luppold and Shutt had been doing. Thereafter, Honaker drove Luppold to various remote switch boxes and waited in the car while Luppold broke into the boxes. Honaker did not otherwise participate in the thefts except once, when he helped Luppold make a key out of an Allen wrench so he could open the boxes more easily. Luppold paid Honaker $1000 the first time he drove and undetermined amounts thereafter.

In the presentence report, the probation officer recommended a base offense level of 6 under USSG § 2B1.1, with a 14-level enhancement for a loss over $400,000, see USSG § 2B1.1(b)(1)(4), and a 2-level adjustment for being an organizer, leader, manager, and supervisor of Honaker, see USSG § 3B1.1(c). With a 3-level adjustment for acceptance of responsibility, USSG § 3E1.1, the recommended offense level was 19. Luppold was in criminal history category I. His advisory guideline range was 30-37 months. The probation officer suggested that an upward departure might be warranted under Application Note 19 to § 2B1.1, which states that an upward departure may be appropriate when the offense level "substantially understates the seriousness of the offense," principally because of non-monetary harm caused by the

offense.  The probation officer offered the following in support of this recommendation:

> [T]he thefts of communication cards disrupted 911 centers for hours, disrupted cellular and residential telephone calls for hours, potentially impacted national security circuits, and caused additional economic and non-economic harm to Verizon and Frontier beyond the amount of restitution in the plea agreement.  The probation officer notes Luppold's conduct was not limited to a single incident of vandalism and theft, but [was] rather a long, ongoing series of incidents which had a wide ranging, serious impact and required numerous hours to correct.

At sentencing, the district court determined, over Luppold's objection, that the aggravated role adjustment applied because (1) Luppold was the only decision-maker during the time Honaker was involved; (2) Honaker's participation was very limited; and (3) Luppold recruited Honaker into the scheme.  The court found that the record was not clear enough about how much money either Luppold or Honaker obtained, or the manner in which the money was divided, to rely on Luppold's having kept most of the money as a factor supporting the role adjustment.  However, the court found that Luppold exercised control and authority over Honaker, who would not have been able to commit the offense alone.

Luppold's attorney noted that the probation officer had recommended a departure and argued against a departure, but did not address any of the grounds put forward in the presentence report.  After finding that Luppold had received notice of a possible departure as required by Fed. R. Crim. P. 32(h), the court departed upward by two levels.

First, the court found that Luppold's primary objective of the offense was non-monetary.  See Application Note 19(A)(I). The court based this finding on Honaker's statement to the state police that Luppold committed the thefts for the thrill of it. Second, the court found that the offense risked substantial non-monetary harm, see Application Note 19(A)(ii), because the theft of the communications cards disrupted at least one 911 call center, as well as other means of communication in two different states, for hours at a time, thus causing a risk to public health and safety. The court also found that the offense created a substantial loss to Frontier and Verizon that went beyond the expense of repairing the damage, due to disruption of both businesses, delay in expansion projects, and damage to the companies' reputations.  See Application Note 19(A)(iv).  Last, the court noted a factor not set out in Application Note 19, that the offense had exposed the vulnerability of the country's critical telecommunications infrastructure.

The court also made the following findings under 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2007):  that the nature and circumstances of the offense were substantially more serious than were reflected by the applicable guideline, see § 3553(a)(1), (a)(2)(A); that an upward departure would provide a more just punishment for the offense and promote respect for the law, see § 3553(a)(2)(A); that a departure would serve to deter future

thefts, see § 3553(a)(2)(B); and that a departure would serve the policy set out in § 3553(a)(6), to avoid unwarranted disparity in sentencing, by treating more seriously a defendant who causes more than monetary harm.

On appeal, Luppold first challenges the role adjustment. A two-level adjustment may be made under § 3B1.1(c) when the defendant is an organizer, leader, manager, or supervisor in a criminal activity involving fewer than five participants. The district court's determination that the defendant was a leader or organizer in the offense is a factual issue that is reviewed for clear error. United States v. Sayles, 296 F.3d 219, 224 (4th Cir. 2002).

Luppold contends that the district court clearly erred in making the adjustment because there was no evidence that Luppold controlled Honaker; rather, Honaker voluntarily agreed to help Luppold with the thefts when he was invited to do so. Luppold also argues that the district court mistakenly conflated the concepts of organization and management with the management and control of another person, and equated greater guilt on Luppold's part with control over the less-guilty Honaker. We disagree. The district court did not clearly err in finding that Luppold recruited Honaker as an accomplice, planned and organized the offense both before and after Honaker entered it, and exercised some degree of control over

Honaker's activities while he was a participant. We conclude that these findings warranted the two-level role adjustment.

Next, Luppold contests the upward departure. Under United States v. Booker, 543 U.S. 220 (2005), a sentence is reviewed for reasonableness. United States v. Moreland, 437 F.3d 424, 432 (4th Cir.), cert. denied, 126 S. Ct. 2054 (2006). Initially, Luppold contends that he first learned of the district court's intention to depart upward at the sentencing hearing and that, for this reason alone, resentencing is required. Rule 32(h) of the Federal Rules of Criminal Procedure requires the sentencing court to give the parties reasonable notice when it is considering a departure on a ground not identified as a possible basis for departure either in the presentence report or in a party's prehearing submission. After Booker, the notice requirement remains in effect and applies both to departures and variances. United States v. Davenport, 445 F.3d 366, 371 (4th Cir. 2006).

However, the plain error standard of review applies when the defendant has not raised the notice issue in the district court. United States v. McClung, 483 F.3d 273, 276 (4th Cir. 2007), petition for cert. filed, ___ U.S.L.W. ___ (U.S. July 12, 2007) (No. 07-5347). Because Luppold did not object to the lack of notice, his claim of error must be reviewed for plain error. Id. at 276. The notice requirement is satisfied if the presentence report recommends a departure on a particular ground. United

States v. Bellamy, 264 F.3d 448, 455 (4th Cir. 2001). Luppold claims that he was not given notice that the court was considering a departure based on the allegation that he committed the offense for the thrill of it or because he exposed the vulnerability of the telecommunications infrastructure. However, he was on notice that the court would consider whether non-monetary harms warranted a departure under Application Note 19, and that the list of factors potentially supporting a departure in Note 19 was not exhaustive, giving the court the opportunity to identify non-monetary motivations and harms particular to his offense that might warrant a departure. Luppold thus received adequate notice.

Luppold also argues that the court departed on improper grounds. When reviewing either a departure or a variance, the appeals court considers "whether the sentencing court acted reasonably both with respect to its decision to impose such a sentence and with respect to the extent of the divergence from the sentencing range." United States v. Hernandez-Villanueva, 473 F.3d 118, 123 (4th Cir. 2007). If the sentencing court determines that a sentence within the guideline range will not serve the purposes of § 3553(a), the "court should first look to whether a departure is appropriate based on the Guidelines Manual or relevant case law." Moreland, 437 F.3d at 432. "If an appropriate basis for departure exists, the court may depart." Id.

Luppold claims that the court's finding that he exposed the vulnerability of the country's telecommunications infrastructure was not supported by any evidence and, to the extent that such vulnerability exists, it was already known to many people who work in that industry. Thus, he could not have exposed an already known fact. However, the relative ease with which Luppold and his accomplices committed the offense and the wide-spread harm that resulted amply support the court's finding.

Last, Luppold contests the extent of the departure. He asserts that the two-level departure increased his sentence as much as it would have increased under § 2B1.1(b)(1) if the offense had caused almost twice the monetary harm that it did. He claims that the departure is thus in conflict with USSG § 5K2.5, p.s. (Property Damage or Loss), which encourages a departure for property damage or loss not already accounted for in the applicable guideline. Under § 5K2.5, the degree of departure "should depend on the extent to which the harm was intended or knowingly risked," and also should be governed by "the extent to which the harm to property is more serious than other harm caused or risked" by the offense. However, property damage and loss are monetary concerns. The principal focus of Application Note 19 to § 2B1.1, and of the district court in its decision to depart, was non-monetary harm caused by Luppold's offense. We conclude that the two-level

departure was not excessive and that the resulting sentence was reasonable.

We therefore affirm the sentence imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>